In re Carl Martin RHEUBAN aka Carl M. Rheuban, Debtor.

No. CV 90–4995–DWW.

United States District Court, C.D. California.

Dec. 27, 1990.

See also 121 B.R. 368.

Randye B. Soref, Wolas, Soref & Ickowicz, Los Angeles, Cal., for appellee.

Elmer Dean Martin, III, Irvine, Cal., for appellant.

ORDER REVERSING BANKRUPTCY COURT'S MEMORANDUM OF DECISION RE: REASONABLENESS OF COMPENSATION PAID TO ELMER DEAN MARTIN III

DAVID W. WILLIAMS, District Judge.

## BACKGROUND

Appellant Elmer Dean Martin III appeals the decision of the United States Bankruptcy Court re Reasonableness of Compensation paid to Elmer Dean Martin III entered August 23, 1990. The facts as recited therein are undisputed, and bear but brief attention here.

Debtor Rheuban was the controlling person of a troubled Savings and Loan Association, which is currently in receivership and under the control of the Resolution Trust Company ("RTC"). On April 24, 1990, Debtor and his wife entered into an employment agreement with Martin, an attorney, pursuant to which Debtor paid Martin $25,000 for 110 hours of services during an eight-month period. The contract provided that the amount was nonrefundable and "is earned in full upon receipt." Additionally, it provided that the attorney may ex parte terminate his services to client "if client does not adequately cooperate with the attorney." Two days after signing the contract and delivering the $25,000 to Martin, the Debtor filed his petition for Chapter 11 Bankruptcy. Upon learning of this arrangement, the bankruptcy judge suspected that a fraudulent transfer of assets of the bankrupt estate may have taken place, and he ordered counsel for the Committee of Unsecured Creditors to prepare orders to show cause why attorneys's fees paid to various professionals including appellant, should not be set aside as unreasonable under 11 U.S.C. § 329 [1].

Appellant brings this appeal from the order of the bankruptcy court requiring him to disgorge the fee that he had collected. Appellant first noticed his appeal to the Bankruptcy Appellate Panel of the Ninth Circuit, but then requested that instead it be heard by a district court judge. The appeal was therefore transferred to this court on September 20, 1990.

## STANDARD FOR REVIEW

■ The construction of appellant's retainer contract is reviewed de novo. *Aslan*

**1.** Section 329 reads as follows:
(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation. ——
(b) If such compensation exceeds the reasonable value of any such services, the court may

*v. Sycamore*, 909 F.2d 367, 369 (9th Cir. 1990).

## STATEMENT OF ISSUES

1. Does the bankruptcy court have jurisdiction to examine the Retainer Agreement entered into by the Appellant and Debtor?

2. Is Appellant entitled to have the issues determined by a jury before an Article III judge?

## DISCUSSION

The appellant bases this appeal primarily [2] on two related constitutional arguments. First, appellant argues that 11 U.S.C. § 329 grant of authority violates Article III of the Constitution. Secondly, he argues that he is entitled, pursuant to the guarantees of the Seventh Amendment to a trial by jury to determine the reasonableness of the compensation paid him.

## I. ARTICLE III

■ The Bankruptcy Court seems to have overlooked appellant's Article III arguments in reaching its decision. Instead, the bankruptcy judge construed appellant's arguments to consist of challenges to his jurisdiction under the current statutes. He failed to consider the crucial question—whether Congress can constitutionally assign adjudication of the issue to a non-Article III tribunal.

Article III, section 1 of the Constitution provides:

cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
(1) the estate, if the property transferred—
(A) would have been property of the estate; or
(B) was to be paid by or on behalf of the debtor under a plan under a Chapter 11, 12, or 13 of this title; or
(2) the entity that made such payment.

**2.** Appellant makes other arguments in favor of reversal. However, because these two are dispositive, this Court need not consider the other arguments advanced by appellant.

The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their offices during good Behavior, and shall, at stated Times, receive for their services, a Compensation, which shall not be diminished during their Continuance in Office.

Article III has been construed to prevent Congress from assigning adjudication of *legal* causes of action to non-Article III tribunals, such as Bankruptcy Courts, with one exception not material here. *Granfinanciera v. Nordberg*, 492 U.S. 33, 52–54, 109 S.Ct. 2782, 2796, 106 L.Ed.2d 26, 48 (1989). Thus, the critical determination necessary under the Article III analysis is whether 11 U.S.C. § 329 is essentially legal or equitable in nature.[3]

### A. IS § 329 LEGAL OR EQUITABLE?

The Supreme Court has endorsed a two-pronged test to determine whether a statutory cause of action is legal or equitable in nature: "First, we compare the statutory action to 18th–century actions brought in the courts of England, prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera*, 492 U.S. at 42, 109 S.Ct. at 2790, 106 L.Ed.2d at 41, *quoting Tull v. United States*, 481 U.S. 412, 417–418, 107 S.Ct. 1831, 1835–1836, 95 L.Ed.2d 365 (1987). The second prong is more important than the first. *Id.*

Section 329 provides for examination by the Bankruptcy Court of compensation paid to attorneys within a year of the debtor's bankruptcy. The legislative history of the section indicates that it was not intended as an action to set aside a fraudulent conveyance or preference. *In re Wood and Henderson*, 210 U.S. 246, 28 S.Ct. 621, 52 L.Ed. 1046 (1908). The bankruptcy judge

relied on the Court's statement that the precursor to modern § 329 is *sui generis* with no exact analog in the English common law. While this is true, the analysis of the nature of the action requires *comparison* between Section 329 and the actions in eighteenth century England. The dispositive question is whether the action that a similarly situated person in the eighteenth century would have had to pursue a remedy would have been in the law courts.

A determination that compensation paid to an attorney was unreasonable is the equivalent of finding that the attorney is in wrongful possession of that excess. In such a situation, the Supreme Court has stated that "[w]henever one person has in his hands money equitably belonging to another, that other person may recover it by assumpsit for money had and received. The remedy at law is adequate and complete". *Gaines v. Miller*, 111 U.S. 395, 397–398, 4 S.Ct. 426, 426–427, 28 L.Ed. 466 (1884), *quoted in Granfinanciera*, 492 U.S. at —, 109 S.Ct. at 2793, 106 L.Ed.2d at 44. Thus, it seems that a trustee seeking to recover the fee from appellant would have had to resort to the law courts via an action for money had and received.

Although the Bankruptcy Judge noted that the Supreme Court mandates a two-pronged inquiry, he failed to consider the second, and most important prong in reaching his decision. If there is any doubt that Section 329 is a legal, rather than an equitable, claim, examining the nature of the remedy sought eliminates it. The Supreme Court has consistently held that where the action seeks a money judgment, the action is at law. *Granfinanciera*, 492 U.S. at 47–48, 109 S.Ct. at 2793, 106 L.Ed.2d at 44. (citations omitted). In this case, the remedy contemplated by § 329 is the refund of fees determined to be excessive by the Bankruptcy Court. Clearly, then, the statutory cause of action provided by § 329 is legal and not equitable in nature.

---

**3.** The bankruptcy judge is correct in asserting that Congress contemplated that the action provided for under 11 U.S.C. § 329 was summary, rather than plenary, in nature. *In re Wood and Henderson*, 210 U.S. 246, 28 S.Ct. 621, 52 L.Ed. 1046 (1908). However, as the preceding analysis will illustrate, unless the party consents to the jurisdiction of the Bankruptcy Court, that party is entitled to demand a jury trial before an Article III judge.

## B. THE PUBLIC RIGHTS DOCTRINE

The public rights doctrine applies when "Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary". *Granfinanciera*, 492 U.S. at 54, 109 S.Ct. at 2797, 106 L.Ed.2d at 49, *quoting Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 593–594, 105 S.Ct. 3325, 3339–3340, 87 L.Ed.2d 409 (1985). The Court went on to say that "a bankruptcy trustee's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2) seems to us more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions". *Id.* Thus, where the dispute existed over whether property not within the bankruptcy estate should be turned over thereto, the Court indicated that private, rather than public, rights were implicated. The Bankruptcy Court did not take note of the *Granfinanciera* decision on this point.

Section 329 involves much the same considerations. Appellant has been ordered to turn over money in his possession at the time the debtor Rheuban filed for bankruptcy. Moreover, the rationale for a provision such as § 329 supports the conclusion that this is a private right. The Supreme Court said in 1908 that the precursor to § 329 "recognizes the temptation of a failing debtor to deal too liberally with his property in employing counsel to protect him in view of his financial reverses". *In re Wood and Henderson*, 210 U.S. at 253, 28 S.Ct. at 624. Thus, this section concerns disputes between the attorney employed by the debtor and those creditors who are adversely affected thereby. This is clearly not a public right within the meaning of that term in the Court's Article III jurisprudence.

Because the cause of action is legal and no public rights are involved, Congress may not assign adjudication of these types of claims to non-Article III tribunals. Ac-cordingly, the decision of the Bankruptcy Court in this matter must be reversed.

## II. SEVENTH AMENDMENT RIGHT TO JURY TRIAL

■ There is a close relationship between appellant's two constitutional challenges to the order at issue in this case. The resolution of the Article III challenge depended upon the following two considerations: (1) whether the cause of action was legal or equitable; and (2) if legal, whether a public right was involved. The disposition of the Seventh Amendment challenge depends upon these issues and one more: whether appellant waived his right to contest the Bankruptcy Court's adjudication of the reasonableness of his fee.

The Supreme Court's decisions clearly indicate that the Seventh Amendment provides for trial by jury where the cause of action is legal and no public rights are implicated thereby. *Granfinanciera*, 492 U.S. at 42, n. 4, 109 S.Ct. at 2790, n. 4, 106 L.Ed.2d at 41, n. 4. As has already been determined, § 329 provides for such a cause of action. Thus, the only possible basis for the Bankruptcy Court's decision denying appellant's right to a jury trial is that he somehow waived his rights thereto.

## A. DID APPELLANT SUBMIT TO THE BANKRUPTCY COURT'S SUMMARY JURISDICTION?

■ The Supreme Court has consistently held that filing a claim against the bankruptcy estate triggers the claim allowance and disallowance process which is appropriate for summary administration by the Bankruptcy Courts. *See Katchen v. Landy*, 382 U.S. 323, 336, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966). By filing such a claim, the creditor submits herself to the Bankruptcy Court's equitable jurisdiction. *Granfinanciera*, 492 U.S. at 59–60, n. 14, 109 S.Ct. at 2799, n. 14, 106 L.Ed.2d at 52, n. 14. Creditors who would otherwise be entitled to a jury trial when sued by the trustee lose that right if they have submitted claims against the bankruptcy es-

tate. *Langenkamp v. Culp*,[4] —— U.S. ——, ——, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990).

 However, appellant did not file any claim against the bankruptcy estate. As noted in the order he appeals from, appellant, relying upon his fee agreement with debtor, did not seek approval of his employment by from the court. Furthermore, in appellant's response to the order to show cause, he demanded trial by jury before an Article III judge. Thus, in no way did appellant waive his right to jury trial.

This Court believes that the recent Supreme Court cases referred to in this Order compel the reversal of the Bankruptcy Court's decision in this case. This Court shares the bankruptcy judge's desire to curtail arrangements between attorneys and debtors which appear to have been struck for the purpose of frustrating creditors of the bankruptcy estate. However, Article III and the Seventh Amendment, as construed by the Supreme Court, require that the reasonableness of appellant's compensation be resolved by a jury in a trial before an Article III judge. Thus, good cause appearing:

IT IS HEREBY ORDERED that the decision of the Bankruptcy Court ordering appellant to disgorge the fee received from the debtor is REVERSED.

---

**4.** The Court stated that "[i]n *Granfinanciera*, we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power". *Langenkamp*, —— U.S. at ——, 111 S.Ct. at 331 (citations omitted). The Court went on to say that "[a]ccordingly, a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate." *Id.*