**In re Carl Martin RHEUBAN a.k.a., Carl M. Rheuban, Debtor.**

**Bankruptcy No. LA 90–10202–VZ.**

United States Bankruptcy Court, C.D. California.

June 13, 1991.

Cary Medill, Law Offices of Cary Medill, Beverly Hills, Cal., for movant.

Gary E. Klausner, Robinson, Diamant, Brill & Klausner, Los Angeles, Cal., for Lawrence Diamond, Chapter 11 Trustee.

Herbert Wolas, Randye B. Soref, Wolas, Soref & Ickowicz, Los Angeles, Cal., for the Official Committee of Unsecured Creditors.

## OPINION RE MOTION TO VACATE JUDGMENT

VINCENT P. ZURZOLO, Bankruptcy Judge.

### I.

### INTRODUCTION

#### A. Summary of the Instant Dispute.

An attorney has asked me to vacate an order requiring him to disgorge compensation he received from a debtor prior to the commencement of the debtor's bankruptcy case. The attorney asserts that my order is void because it was based on conclusions of law that were later rejected on appeal in a separate matter in the same bankruptcy case. I deny this motion for the reasons discussed below.

#### B. Procedural Background.

On December 17, 1990, my "Memorandum of Decision re Reasonableness of Compensation Paid to Cary W. Medill" (the "Medill Order") was entered. In the Medill Order, and pursuant to 11 U.S.C. § 329 ("§ 329"), I directed attorney Cary W. Medill ("Medill") to disgorge $177,500 to Lawrence Diamant (the "Trustee"), the Chapter 11 trustee in this bankruptcy case. I issued the Medill Order after conducting three hearings on my "Order to Show Cause re Disgorgement of Fees" (the

"OSC") based upon my finding that Medill's receipt of $200,000 three days prior to the filing of this case, from Carl Martin Rheuban ("Debtor"), the debtor in this case, was not reasonable compensation for legal services Medill provided and promised to provide to Debtor.

On December 27, 1990, Medill timely filed a Notice of Appeal of the Medill Order (the "Appeal"). Also on December 27, 1990, Medill filed a "Notice of Motion for Reconsideration of Memorandum of Decision re Reasonableness of Compensation Paid to Cary Medill" (the "Notice"). A hearing was set for January 31, 1991 ("Hearing # 1"). On January 25, 1991, Medill filed the motion ("Motion # 1") which was referred to in the Notice. Pursuant to Local Bankruptcy Rule 111(1)(f), Motion # 1 was not timely filed and served. I therefore denied Motion # 1.

On February 22, 1991, Medill filed his "Notice of Motion and Motion for Reconsideration and/or Modification of Memorandum of Decision re Reasonableness of Compensation" ("Motion # 2"). A hearing was set for March 13, 1991 ("Hearing # 2"). On March 4, 1991, the Official Committee of Unsecured Creditors (the "Committee") and the Trustee filed a response to Motion # 2 (the "Response"). Medill, the Trustee and the Committee agreed to dismiss the Appeal before the hearing on Motion # 2.

### II.

### APPLICATION OF FEDERAL RULE OF CIVIL PROCEDURE 60(b) AND B.R. 9024

Medill cites Federal Rule of Civil Procedure ("F.R.C.P.") 60(b)(4) as the sole basis for vacating the Medill Order[1]. F.R.C.P. 60(b)(4) states in part that: "... the court may court may relieve a party ... from a final ... order ... for the following reasons: (4) the judgment is void."

Medill argues that the Medill Order is void because of an order issued by the a district judge for the Central District of California (the "Appellate Order"). The Appellate Order was published as *In re*

1. Bankruptcy Rule 9024 provides that F.R.C.P. 60 is applicable in bankruptcy cases.

*Rheuban* at 124 B.R. 301 (C.D.Cal.1990). In the Appellate Order, the district judge, exercising the appellate authority Congress granted in 28 U.S.C. § 158(a)[2], reversed a Memorandum of Decision (the "Martin Memorandum") in which I ordered attorney Elmer Dean Martin III ("Martin") to disgorge compensation paid to him by Debtor prior to the commencement of this case pursuant to 11 U.S.C. § 329. Medill asserts that the issues of law pertinent in his case are the same as those raised by Martin, and therefore the Appellate Order renders the Medill Order void.

Neither in Motion # 2 nor at the hearing on Motion # 2 did Medill state how or why the Appellate Order has any effect on the Medill Order, let alone how or why it renders the Medill Order void. I conclude that it would be reasonable and appropriate to deny Motion # 2 strictly because of this deficiency. Because of the significance of the issues raised by Medill in Motion # 2, however, I nevertheless will discuss the only possible bases for Medill's assertion:

1. The doctrines of claim and issue preclusion require me to reverse the Medill Order because it conflicts with the Appellate Order;

2. The Appellate Order binds whatever determination I make concerning similar issues according to the doctrine of *stare decisis;* or

3. The reasoning in the Appellate Order persuades me that the reasoning underlying the Medill Order is flawed.

### III.

### *EFFECT OF THE APPELLATE ORDER*

#### A. Claim and Issue Preclusion

■ Under the doctrines of claim and issue preclusion, a party is barred from rearguing a claim for relief, an affirmative defense or an issue if the party has fully litigated that claim, defense or issue in a previously and finally determined dispute before a court with jurisdiction over the dispute. *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Restatement (Second) of Judgments* §§ 19 and 27 (1980). These doctrines are valuable because they remove from the dockets of busy courts disputes that have already been resolved. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).

■ The Appellate Order has no such preclusive effect on the Medill Order for at least three reasons. First, Medill was not a party to the proceeding which the Appellate Order concerns. Second, the Appellate Order is not a final order because the district judge set a jury trial before himself under § 329.[3] Third, the Appellate Order was entered *after* the Medill Order. Doctrines of claim and issue preclusion apply only to final orders entered *before* the instant dispute.

For these reasons, I conclude that the doctrines of claim and issue preclusion do not support Medill's arguments.

#### B. Stare Decisis

■ Under the doctrine of *stare decisis*, once a court renders a decision, that same court and all courts that owe obedience to that court must follow that decision. *See*, 1 B.J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice*, ¶ 0.401 (2d Edition 1990). For example, all courts located in the United States of America owe obedience to the United States Su-

**2.** 28 U.S.C. § 158. Appeals.

(a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only

to the district court for the judicial district in which the bankruptcy judge is serving.

**3.** The portion of the Appellate Order setting a jury trial before the district judge on the reasonableness of Martin's compensation under § 329 was deleted from the version of the Appellate Order reported at 124 B.R. 301. This portion can be found in the version of the Appellate's Order attached to Motion # 2 as an exhibit.

preme Court (the "Court") and are bound by the doctrine of *stare decisis* to follow its decisions. Similarly, the decisions of the Ninth Circuit Court of Appeals bind the United States District Judges of the Central District of California and the United States Bankruptcy Judges of the Central District of California. This doctrine is valuable because it enhances the predictability and stability of overburdened court systems and significantly reduces the number of appeals that must be heard by a superior appellate court such as the Ninth Circuit Court of Appeals or the Court. *Moore*, ¶ 0.402[1] at 12 note 15.

Based upon the foregoing, the Appellate Order has *stare decisis* effect upon my decisions and the decisions of all nineteen United States Bankruptcy Judges in the Central District of California only if: (1) the Appellate Order is binding on all thirty-one United States District Judges of the Central District of California; and (2) the United States District Court of the Central District of California is superior to the United States Bankruptcy Court of the Central District of California in the same way that the Ninth Circuit Court of Appeals and the Court are superior to the United States Bankruptcy Court of the Central District of California. Neither proposition is true.

█ Regarding the first proposition, the Ninth Circuit Court of Appeals has decided that a judge in a multi-judge district is not bound by the decisions of other judges in that district. *Starbuck v. City and County of San Francisco*, 556 F.2d 450, 457 note 13 (9th Cir.1977).

█ As to the second, 28 U.S.C. § 151 provides, "The bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district." Section 151 also provides that "each bankruptcy judge ... [is] ... a judicial officer of the district

court." Thus the United States Bankruptcy Court of the Central District of California is not a court separate from the United States District Court for the Central District of California. Rather, it is a unit *of* the United States District Court for the Central District of California for the purpose of exercising judicial, rather than administrative[4] power. *See, In re Gaylor,* 123 B.R. 236 (Bankr., E.D.Mich.1991); March and Obregon, "Are BAP Decisions Binding On Any Court?" 18 Cal.Bankr.J. 189, 191–193 (1990). Therefore the Appellate Order does not have *stare decisis* effect.

My conclusion is supported by *Bank of Maui v. Estate Analysis, Inc.,* 904 F.2d 470 (9th Cir.1990). In this decision the Ninth Circuit Court of Appeals concluded that decisions of the Bankruptcy Appellate Panel for the Ninth Circuit do not bind the United States Bankruptcy Judges serving in districts located in the Ninth Circuit. The Bankruptcy Appellate Panel for the Ninth Circuit shares the same appellate authority as the United States District Court for the Central District of California. 28 U.S.C. § 158(b)(1).[5] Thus, if the appellate authority exercised by the Bankruptcy Appellate Panel for the Ninth Circuit has no *stare decisis* effect, it follows that the appellate authority of a United States District Judge under § 158(a) does not either.

The Appellate Order and the Medill Order were issued by judicial officers serving in the same district court. The decisions of judicial officers serving in the same district court are not binding on the other judicial officers serving in that court. As a result, the Appellate Order has no *stare decisis* effect.

### C. The Persuasive Force of the Appellate Order

The only remaining foundation for Medill's argument that the Medill Order is

---

4. The bankruptcy court, including its clerk's office, is an independent administrative unit not subject to the control of district judges, 28 U.S.C. 156; except as specified by Congress. *See, e.g.* 28 U.S.C. § 154(b), (district judges have power to appoint chief bankruptcy judge).

5. "The judicial council of a circuit may establish a bankruptcy appellate panel, comprised of bankruptcy judges from districts within the circuit, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section." 28 U.S.C. 158(b)(1).

void is that the reasoning expressed in the Appellate Order, concerning issues of law common to both the Medill Order and the Appellate Order, is persuasive. Consideration of this argument requires a summary and an analysis of the reasoning in the Appellate Order. Both are difficult because the expression of the reasoning in the Appellate Order is cursory, apparently because the district judge originally did not intend to publish the Appellate Order.[6]

### 1. Summary of the Reasoning Set Forth in the Appellate Order

The first part of the Appellate Order is titled "Background." In that section, the district judge recounts the procedural setting of the underlying proceeding; namely, Martin entered into an employment agreement with Debtor under which Debtor paid Martin $25,000; the $25,000 payment was described as a nonrefundable "earned upon receipt" retainer; and Martin claimed he was providing legal services to Debtor only as a debtor and not as a debtor in possession. The following is also stated in the Background section of the Appellate Order:

> Upon learning of this arrangement, the bankruptcy judge suspected that a fraudulent transfer of assets of the bankruptcy estate may have taken place ...

This statement reflects an inaccuracy[7] that is woven into the fabric of the Appellate Order. *See* Section III, D below.

The district judge addressed only two issues in the Appellate Order: (1) "Does the Bankruptcy Court have jurisdiction to examine the [employment agreement between a debtor and debtor's counsel] ...?"; and (2) "Is [debtor's counsel] entitled to have the issues determined by a jury before an Article III Judge?" Underlying the second issue is an assumption never stated or analyzed in the Appellate Order; i.e., a trial by jury cannot be conducted by a bankruptcy judge who is not afforded certain protections under Article III, Section 1 of the United States Constitution.[8]

In resolving these issues, the district judge made the following conclusions:

(1) The Court has concluded that Article III, Section 1 prohibits Congress from assigning adjudication of claims for relief that would have been heard by an 18th century English court of law, to be distinguished from an 18th century English court sitting in equity, to United States Bankruptcy Judges. The district judge cited the Court's decision in *Granfinanciera v. Nordberg, ("Granfinanciera")*, 492 U.S. 33, 109 S.Ct. 2782, 2796, 106 L.Ed.2d 26 (1989) as support for his statement of law.

(2) 11 U.S.C. § 329 describes a claim for relief that is similar to one that would have

---

**6.** The Appellate Order was labeled by the district judge as an "Order ..." Local Bankruptcy Rule 158, promulgated by the United States District Court for the Central District of California pursuant to Bankruptcy Rule 9029, provides that:

> "Each written disposition on appeal to the District Court from the [bankruptcy court] shall bear under the number in the caption an appropriate label, that is, OPINION, MEMORANDUM or ORDER. A written reasoned disposition of the case which is intended for publication is an OPINION. A written reasoned disposition of a case which is not intended for publication is a MEMORANDUM. Any other disposition of a matter is an ORDER."

**7.** The Martin Memorandum from which Martin appealed clearly states the basis for my setting an order to show cause regarding the compensation paid by debtor to Martin: "... [after reviewing sworn written statements submitted by

debtor] ... I became concerned *with the reasonableness of the transfers to the various legal professionals* employed by debtor prior to filing this case." (emphasis added) The Martin Memorandum from which Martin appealed and which the district judge considered in the Appellate Order made it clear that the review I conducted of the relationship between Martin and Debtor was conducted solely under § 329 and not under 11 U.S.C. §§ 544 or 548.

**8.** Article III, Section 1 of the Constitution provides:

> "The judicial Power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the Supreme and Inferior Courts, shall hold their offices during good Behavior, and shall, at stated Times receive for their services, a Compensation, which shall not be diminished during the Continuance in Office."

been heard by a court of law in 18th century England; i.e., assumpsit for money had and received.

(3) The remedy provided by 11 U.S.C. § 329 is a money judgment and the Court has held that if an action seeks a money judgment, the action is at law. The district judge cited the *Granfinanciera* decision at page 2793 in support of this statement.

(4) A proceeding under 11 U.S.C. § 329 is much like an avoidance power claim for relief under 11 U.S.C. § 548 and therefore does not involve an adjudication of a public right. As a result, the district judge concludes that Congress may not assign adjudication of proceedings under 11 U.S.C. § 329 to bankruptcy judges.

### D. Is 11 U.S.C. § 329 Similar to an Action that would be Tried in An 18th Century English Court of Law?

■ 11 U.S.C. § 329(a) provides as follows:

a. Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

b. if such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(a) would have been property of the estate; or

(b) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

Bankruptcy Rules 2016 and 2017, prescribed by the Court[9], implement procedures for the review of relationships between a debtor and her attorneys contemplated by § 329. The pertinent portions of these rules provide as follows:

Every attorney for a debtor, whether or not the attorney applies for compensation, shall file with the court within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed within 15 days after any payment or agreement not previously disclosed. Bankruptcy Rule 2016(b).

On motion by any party in interest or *on the court's own initiative,* the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor, to an attorney for services rendered or to be rendered is excessive. Bankruptcy Rule 2017(a) (emphasis added).

According to the district judge, it is important to determine if § 329 review constitutes an action at law, because if it does, then (1) Article III, Section 1 prohibits Congress from assigning that judicial review to bankruptcy judges; and (2) the first prong of the two-pronged test endorsed by the Court in *Granfinanciera* to determine whether a right to trial by jury provided by

---

**9.** 28 U.S.C. § 2075 provides in pertinent part: "The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under Title 11."

the Seventh Amendment[10] is satisfied. *Appellate Order*, 124 B.R. 301, 303–304.

The Court squarely addressed this issue in *In re Wood and Henderson*, 210 U.S. 246, 28 S.Ct. 621, 52 L.Ed. 1046 (1908). In that decision, the Court considered the nature of the statutory predecessor to § 329—§ 60(d) of the now superseded Bankruptcy Act of 1898.[11] The specific issue on appeal to the Court was whether judicial review of the relationship between the debtor and the debtor's attorney was restricted to transactions that occurred within the bounds of the district in which the bankruptcy case was pending. The argument of the appellant/debtor's attorney was that judicial review under § 60(d) resembled a cause of action to avoid a preferential or fraudulent transfer and therefore was subject to the same limits of jurisdiction that restricted avoidance power actions.

A majority of the Court concluded that the judicial review of the relationship between a debtor and the debtor's attorney under § 60(d) was not an avoidance power cause of action and did not resemble *any* cause of action that would be heard in an 18th century English court of law. *In re Wood and Henderson*, 210 U.S. 246, 253–254, 28 S.Ct. 621, 624–625, 52 L.Ed. 1046. The Court expressly concluded that its determination of the nature of the judicial review conducted under § 60(d) did not deprive parties of their Seventh Amendment rights to a trial by jury because the existence of such a right is dependent upon the nature of the instant cause of action. Because the judicial review conducted under

§ 60(d) was not like any cause of action heard by 18th century English courts of law, there never was any right to a trial by jury of issues arising under § 60(d). *In re Wood and Henderson*, 210 U.S. 246, at 254, 28 S.Ct. 621, at 625.

In reliance upon in *In re Wood and Henderson* and in compliance with the doctrine of *stare decisis*, I concluded in the Martin Memorandum and in the Medill Order that a proceeding under § 329, the successor statute to § 60(d), is not like any cause of action that would have been heard by an 18th century English court of law. In the Appellate Order, the Court fails to address the straightforward holding of *In re Wood and Henderson* and concludes instead that the judicial review conducted under § 329 is the functional equivalent of an action lying in assumpsit for money had and received. This analysis ignores the *stare decisis* effect of *In re Wood and Henderson*, the plain statutory language of § 329 and the nature of the review I conducted of the relationship between Martin and Debtor.

Section 329 and Bankruptcy Rule 2017 provide bankruptcy judges with the authority to review the reasonableness of the employment relationship between a debtor and the debtor's attorney. The purpose of the review is not to equalize the distribution of estate assets to creditors, as in an avoidance power action under 11 U.S.C. §§ 544–549; rather, it is to regulate the relationship between the debtor's attorney, an officer of the court who owes special fiduciary duties to his client and to the

---

**10.** The Seventh Amendment provides "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the Rules of the common law."

**11.** Former § 60(d) provided: "(d) If a debtor shall, directly or indirectly, in contemplation of the filing of petition by or against him, pay money or transfer property to an attorney at law, for services rendered or to be rendered, the transaction may be examined by the Court on its motion or shall be examined by the Court on petition of the trustee or any creditor shall be held valid only to the extent of a reasonable

amount to be determined by the Court, and the excess may be recovered by the trustee for the benefit of the estate.

If, whether before or after filing, a debtor shall agree orally or in writing to pay money or transfer property to an attorney at law after the filing the transaction may be examined by the Court on its own motion or shall be examined by the Court on petition of the bankrupt made prior to discharge and shall be held valid only to the extent of a reasonable amount to be determined by the Court, and any excess obligation shall be cancelled, or if excess payment or transfer has been made, returned to the bankrupt."

court, and the debtor, who is especially vulnerable to overreaching by an attorney when the debtor is contemplating bankruptcy. *In re Wood and Henderson,* 210 U.S. 246, 252–253, 28 S.Ct. 621, 624, 52 L.Ed. 1046.

The unique nature of § 329 review is highlighted by the fact that it is located in that portion of the Code which concerns employment and compensation of professionals. 11 U.S.C. §§ 327–331. A bankruptcy court's review of the reasonableness of compensation under § 329 is essentially similar to the review of the reasonableness of compensation under §§ 330 or 331, just as the review of the reasonableness of an agreement under § 329 is comparable to reviewing the reasonableness of an agreement between the fiduciary of a bankruptcy estate and a professional person under § 328.

The purpose of this judicial review is not adjudication of a dispute between private parties over the rightful possession of money had and received. It is instead judicial supervision of the conduct of an officer of the court. This conclusion is bolstered by the Court expressly authorizing the bankruptcy court to review the relationships between debtors and their attorneys under § 329 on the court's own initiative, whether or not the debtor or creditors of the bankruptcy estate request relief from the Court. Bankruptcy Rule 2017 [12].

There are at least two reasons for the Court including this language in Bankruptcy Rule 2017: (1) judicial review under § 329 does not constitute an adversarial proceeding within the meaning of Bankruptcy Rule 7001; and (2) attorneys and

trustees, who are ordinarily attorneys, are reluctant to request that a court review the relationship between a debtor and the debtor's attorney under § 329 for fear of retaliation from their fellow attorneys. *Cf. Matter of Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1255 (5th Cir.1986).

In the Appellate Order, the district judge stated that his conclusion, i.e. that judicial review under § 329 *is like* a cause of action that would have been tried in 18th century English courts of law, was rendered free of doubt when one considers the remedies available under § 329. The district judge reasoned that because disgorgement of excessive compensation is one remedy under § 329, then judicial review under § 329 is analogous to an action at law. *Appellate Order,* 124 B.R. 301, 303. I conclude that even a cursory reading of § 329 would reveal that the remedies provided therein by Congress cannot be characterized fairly as a judgment in assumpsit for money had and received.

■ Section 329 provides that if the court determines that the agreement between the debtor and the debtor's attorney is not reasonable, the court may cancel that agreement. This remedy is available whether or not money has been transferred from the debtor to her attorney. This is not a remedy available in an action for assumpsit.[13] Further, if the Court determines that the debtor's attorney should disgorge excessive compensation, the compensation is not necessarily returned to the bankruptcy estate. Rather, if the compensation was paid by a party other than the debtor, it is ordinarily returned to the entity that made the payment to the debtor's

**12.** This conclusion is also supported by the requirement of Bankruptcy Rule 2016(b) that all attorneys for a debtor, whether or not they seek compensation from the bankruptcy estate, disclose in writing to the bankruptcy court *all* compensation received from *any* party for providing legal services to the debtor, whether or not the services are bankruptcy-related.

**13.** The cause of action for assumpsit for money had and received has been defined as being "of equitable character and lies, in general, whenever defendant has received money which in equity and good conscience he ought to pay to

plaintiff." *Black's Law Dictionary,* ¶ 123 (6th Ed.West 1990). The original form of action in assumpsit was contractual in nature and was created to provide a remedy to a contracting party who was barred from recovery by law. *See, H. Russell Taylor's Fire Prev. v. Coca Cola Bottling,* 99 Cal.App.3d 711, 718–720, 160 Cal. Rptr. 411 (1979). (Discussion of history of assumpsit cause of action). Despite its confusing history, assumpsit undoubtedly was created to provide a plaintiff an effective remedy for the recovery of money from a defendant who holds it in contravention of principles of equity and natural justice.

attorney. Section 329(b)(2). This latter provision makes clear that § 329 judicial review is not a sub-specie of the avoidance power claims for relief set forth in 11 U.S.C. §§ 544 through 549 because the remedies that are available under § 329 may be ordered by the court whether or not money or property has changed hands and regardless of who made payment to the debtor's attorney, if a payment was made.[14] These remedies are unlike any available in any cause of action that would have been heard by an 18th century English court of law.

As the Court stated in *In re Wood and Henderson,* judicial review under § 329 is *sui generis*—it is not like any cause of action at law or at equity. 210 U.S. 246, 253. To the extent judicial review under § 329 resembles any 18th century cause of action, it would be an action for re-scission.[15]

I suggest that twisting, turning, and distorting judicial review under § 329 so that it looks like an action at law *or* an action at equity is not a cogent form of analysis. The simpler and more honest approach is to recognize that § 329 is a form of judicial review different from any dispute considered by any 18th century English court and therefore the traditional analysis used in determining whether a party has a right to a jury trial under the Seventh Amendment is not pertinent. This was the position taken by the Court *In re Wood and Henderson,* that I am required to take by the doctrine of *stare decisis,* and that I conclude is correct.

## E. Article III, the Public Rights Doctrine and the Seventh Amendment

The other principal conclusion reached by the district court in the Appellate Order is:

Article III has been construed to prevent Congress from assigning adjudication of *legal* causes of action to non-Article III tribunals, such as bankruptcy courts, with one exception not material here. *Granfinanciera v. Nordberg,* [492 U.S. 33] 109 S.Ct. 2782, 2796 [106 L.Ed.2d 26] (1989). 124 B.R. 301, 303.

The district judge provided absolutely no explanation for how he reached this conclusion. This is unfortunate because this unsubstantiated conclusion forms the premise upon which the entire analysis in the Appellate Order is based. It is difficult to understand why this premise was not examined because it is far from uncontroversial. It also is not supported by *Granfinanciera.*

### 1. What the Court Held on Page 2796 of Granfinanciera

The actual holding of the Court in *Granfinanciera* is quite limited: a party in an adversary proceeding in which the trustee or debtor in possession seeks to avoid a fraudulent transfer under 11 U.S.C. § 548 has a right to trial by jury under the Seventh Amendment if that party has not filed a claim in the bankruptcy case. The Court in *Granfinanciera* expressly reserved making any ruling on an issue that apparently was not yet before it and which is a source of great controversy and concern, i.e., whether Article III, Section 1 prohibits a bankruptcy judge from exercising the judicial power granted by Congress under the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No.–98–353, (the "1984 Amendments") by conducting a jury trial. As the Court stated:

We do not decide today whether the current jury trial provision—28 U.S.C. 1411 (1982 ed., Supp. IV)—permits bankruptcy

---

**14.** Also, § 329 does not require a finding that the debtor was insolvent at the time compensation was paid to his attorney or that the debtor was rendered insolvent by the payment of compensation. This finding is required in constructively fraudulent transfer claims for relief. 11 U.S.C. § 548(a)(2)(B) *See, e.g.* California Civil Code § 3439.08(b)(2).

**15.** Rescission is an equitable remedy [*Will, U.S. District Judge v. Calvert Fire Insurance Compa-*

*ny,* 437 U.S., 655, 659 n. 1, 98 S.Ct. 2552, 2555 n. 1, 57 L.Ed.2d 504 (1978)] in which a court cancels a contract and may return the contracting parties to their respective positions at the time the contract was executed. 12 W.E.H. Jaeger, *Williston on Contracts* § 1454A (3rd Ed. 1970). There is no right to trial by jury on equitable claims under the Seventh Amendment. *See* FN 10 above.

courts to conduct jury trials in fraudulent conveyance actions like the one respondent initiated. Nor do we express any view as to whether the Seventh Amendment or Article III allows jury trials in such actions to be held before non-Article III bankruptcy judges subject to the oversight provided by the district courts pursuant to the 1984 Amendments. *Granfinanciera* 109 S.Ct. 2782, 2802.

The above-quoted portion of the *Granfinanciera* decision makes clear that the Court did not reach the holding that the district judge cites as support for his conclusion in the Appellate Order. In the portion of the *Granfinanciera* opinion cited by the district judge in the Appellate Order, the Court does the following:

a. Defines the "public rights" doctrine —"In certain situations, of course, Congress may fashion causes of action that are closely *analogous* to common-law claims and place them beyond the ambit of the Seventh Amendment by assigning their resolution to a forum in which jury trials are unavailable." *Granfinanciera*, 109 S.Ct. 2782, 2796;

b. Makes clear that the "public rights" doctrine is not limited to causes of action in which the government is a party in its sovereign capacity. *Id.;* and

c. States that, in cases not involving the federal government, the crucial question in determining the applicability of the public rights doctrine is whether "Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create(d) a seemingly 'private' right that is so closely integrated into a public regulatory scheme to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Granfinanciera* at 2797 quoting *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 586, 105 S.Ct. 3325, 3335, 87 L.Ed.2d 409 (1985).

The discussion of the Court in the portion of the *Granfinanciera* opinion outlined above does not support the conclusion that a bankruptcy judge cannot hear legal causes of action and does not support the conclusion that bankruptcy judges cannot conduct trials by jury. It does make clear that the "public rights" doctrine was developed by the Court to reconcile with the plain language of Article III, Section 1 and the Seventh Amendment Congress' perceived need to assign adjudication of regulatory or administrative disputes to administrative tribunals in which a jury is not available. The "public rights" doctrine has no applicability to disputes heard by bankruptcy judges *if* Congress' grant of judicial power to bankruptcy judges through the district courts does not violate Article III, Section 1 and *if* bankruptcy judges can conduct jury trials. Again, it must be noted that the Court in *Granfinanciera* expressly did not rule on these questions and the district judge offered no analysis of his own regarding these issues in the Appellate Order. Thus I cannot tell if the reasoning underlying the district judge's conclusion to the Appellate Order is persuasive or not. My analysis of these issues is set forth below.

2. Does Article III, Section 1 Prevent Congress from Assigning Adjudication of Issues Arising under Section 329 to Bankruptcy Judges under the 1984 Amendments?

The mandate of Article III, Section 1 is clear and simple—the judicial power of the United States shall be exercised by judges who hold their offices for life, unless impeached for improper conduct, and whose compensation cannot be reduced while they hold office. The purpose of Article III, Section 1 is to protect the federal judiciary from attempts by the Congress or the President of the United States of America to exert improper influence over members of the federal judiciary by terminating their employment or reducing their compensation. *Northern Pipe–Line Construction Co. v. Marathon Pipe Line Co. et al,* ("Marathon") 458 U.S. 50, 57–60, 102 S.Ct. 2858, 2864–66, 73 L.Ed.2d 598 (1982). An example of the threat perceived by the Court is that Congress may create a parallel federal judicial system that would exercise the judicial power of the United States

and yet not have Article III, Section 1 protections against undue influence by the legislative or executive branches. *Marathon*, 458 U.S. 50, 73, 102 S.Ct. 2858, 2872.

Despite the clarity and simplicity of Article III, Section 1 and the significance of the threat to the independence of the federal judiciary perceived by the Court, the Court has often concluded that Congress may vest the judicial power of the United States in federal courts that do not have the protections of Article III, Section 1. *Marathon*, 458 U.S. 50, 70, 102 S.Ct. 2858, 2871. *See*, Resnik, "The Mythic Meaning of Article III Courts," 56 Co.L.Rev. 581, 586–588 (1985).

In Section III of *Marathon*, the Court identified the three situations in which Article III, Section 1 does not bar the creation of courts whose judges do not have the protections of Article III, Section 1:

a. *Territorial Courts* —Article IV gives Congress exclusive authority over territories of the United States of America. Thus Congress is free to grant judicial power to courts and territories without extending the protections of Article III, Section 1 to those courts' judges. *Marathon*, 458 U.S. 50, 64–65, 102 S.Ct. 2858, 2867–68.

b. *Military Courts* —Article I, Section 8 and Article II, Section 2 give Congress and the president extraordinary control over the armed forces. With little or no explanation, the Court quoted its opinion in *Dynes v. Hoover*, 20 How. 65, 15 L.Ed. 838 (1857) as support for its conclusion that there is no connection between Article III and the ability of the executive and legislative branches to establish courts for the armed forces. *Marathon*, 458 U.S. 50, 66, 102 S.Ct. 2858, 2869.

c. *Public Rights Tribunals* —The Court stated that it was appropriate for Congress to assign adjudication of disputes which are similar to causes of action that would be heard in courts of law *and* equity to a non-judicial tribunal *if* the dispute involved the United States of America or, if the government was not a party, the dispute was integral to a public regulatory scheme in which there is a limited need for Article III supervision. *Marathon*, 458

U.S. 50, 67–70, 102 S.Ct. 2858, 2869–71. It is important to note that in public rights tribunals there is no right to a jury trial.

There is a fourth exception to the mandate of Article III, Section 1 which the court only discusses tangentially in Section IV of *Marathon*. For convenience of reference I will refer to this as the "adjunct" exception. The Court recognized that it had previously upheld Congress' authorization of the use of federal judicial officers who did not have the protections of Article III, Section 1 to adjudicate disputes arising in law and in equity "so long as those adjuncts were subject to sufficient control by an Article III district court." *Marathon*, 458 U.S. 50, 79, 102 S.Ct. 2858, 2875 citing *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) and *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

In *Marathon*, the specific claim for relief under review by the Court was not any claim for relief created by the 1978 Bankruptcy Reform Act. It was instead a contract action brought by the fiduciary of the bankruptcy estate against a third party. The Court decided that the grant of judicial power created by Congress in the 1978 Bankruptcy Reform Act was not consistent with Article III, Section 1 and upset the checks and balances the framers established between the three branches of our federal government. Specifically, the Court concluded that the 1978 Bankruptcy Reform Act was not sufficiently similar to the three exceptions discussed by the Court in Section III and did not provide for sufficient control by Article III protected district judges so as to fall within the adjunct exception discussed in Section IV of *Marathon*.

The Court in *Marathon* went on to conclude that private or public rights created by Congress could be adjudicated by an adjunct judicial officer, who does not enjoy the protections of Article III, Section 1, if the designated judicial power is vested by Congress originally in a judicial officer who does enjoy the protections of Article III, Section 1 and the adjunct judicial officer is subject to sufficient control by an Article

III protected judicial officers. *Marathon,* 458 U.S. 50, 77–79, 102 S.Ct. 2858, 2874–76.

3. The 1984 Amendments and Marathon

In drafting the 1984 Amendments, Congress directly considered and addressed the problems raised and the solutions suggested by the Court in *Marathon.* As a result, under the 1984 Amendments,

a. The judicial power exercised under Title 11 of the United States Code (the "Bankruptcy Code") is vested in district courts;

b. District courts may authorize bankruptcy judges, appointed by Article III protected circuit judges, to exercise this judicial power;

c. If a district court authorizes bankruptcy judges to exercise this judicial power, district judges may at any time, for cause, withdraw this authority;

d. Bankruptcy judges may enter final orders only in those disputes that are at the core of the adjustment of debtor-creditor relationships;

e. Only district judges, unless all parties consent, may enter final orders in those disputes which concern state created private rights, such as the dispute scrutinized by the Court in *Marathon;* and

f. District judges, unless all parties consent, review on appeal those orders that bankruptcy judges enter in disputes that are at the core of the debtor/creditor relationship. 28 U.S.C. §§ 151–158.

It is impossible to imagine a statutory scheme that could give Article III protected judges more supervision over the exercise of the judicial power of the United States by bankruptcy judges who are not protected by Article III, Section 1. It has been argued that this structure is inefficient and unwieldy. *See,* e.g., Rodino and Parker, "The Simplest Solution," 7 Bankr.Dev.J. 329, 338 (1990). Efficiency must not be confused, however, with constitutionality.

Nearly[16] all courts that have considered the constitutionality of the 1984 Amendments have concluded it does not violate the precepts of Article III. *Danning v. Lummis (In re Tom Carter Enterprises, Inc.),* 44 B.R. 605 (C.D.Cal.1984); *Production Steel, Inc. v. Bethlehem Steel Corp. (In re Production Steel, Inc.),* 48 B.R. 841 (M.D.Tenn.1985); *Firestone v. Dale Beggs & Associates (In re Northwest Cinema Corp.),* 49 B.R. 479 (Bankr.D.Minn.1985); *Allard v. Benjamin (In re Delorean Motor Co.),* 49 B.R. 900 (Bankr.E.D.Mich. 1985); *Ginsberg v. Elkem Metals Co. (In re Olympic Foundry Co.),* 51 B.R. 428 (Bankr.W.D.Wash.1985); *Nordberg v. Republic National Bank of Miami (In re Chase & Sanborn Corp.),* 51 B.R. 733 (Bankr.S.D.Fla.1985); *Creditthrift of America v. Lawson (In re Lawson),* 52 B.R. 369 (E.D.Ky.1985), *cert. dn'd* 479 U.S. 1036, 107 S.Ct. 889, 93 L.Ed.2d 841; *Satelco, Inc. v. North Am. Publishers, Inc. (In re Satelco, Inc.),* 58 B.R. 781 (Bankr.N.D. Tex.1986); *DuVoisin v. Anderson (In re Southern Industrial Banking Corporation),* 66 B.R. 349 (Bankr.E.D.Tenn.1986); *Earle Industries, Inc. v. Bond General Contracting, Inc. (In re Earle Industries, Inc.),* 71 B.R. 919 (Bankr.E.D.Pa.1987); *Global International Airways Corp. v. Azima (In re Global International Airways Corp.),* 81 B.R. 541 (W.D.Mo.1988); *Kershaw v. Behm (In re John K. Kershaw),* 81 B.R. 897 (D.M.D.Tenn.1988); *Teitelbaum v. Choquette & Co., Inc. (In re Outlet Department Stores),* 82 B.R. 694 (Bankr.S.D.N.Y.1988); *Carr v. Michigan Real Estate Insurance Trust (In re Michigan Real Estate Insurance Trust),* 87 B.R. 447 (Bankr.E.D.Mich.1988); *Storage Equities, Inc., et al. v. Delisle (In re Delisle),* 91 B.R. 616 (N.D.Ga.1988).

It is my conclusion that the 1984 Amendments do not violate Article III, Section 1 because they fall within the adjunct exception. In drafting the 1984 Amendments, Congress, however, apparently adopted a

**16.** One court was inclined to declare the 1984 Amendments unconstitutional, but was prevented by the doctrine of *stare decisis* from doing so. *L.T. Ruth Coal Co. Inc., v. Big Sandy Coal and Coke Co. Inc., (In re L.T. Ruth Coal Co. Inc.),* 66

B.R. 753 (Bankr.E.D.Ky.1986). Another court that concluded the 1984 Amendments were unconstitutional was reversed. *Matter of Associated Grocers of Nebraska Co-op., Inc.,* 46 B.R. 173

"belt and suspenders" approach; i.e., in addition to fashioning a grant of judicial power that would fall within the adjunct exception, it also attempted to place a majority of the disputes commonly heard by bankruptcy judges within the "public rights" doctrine. By this I refer to Congress' creation of "core" disputes and "non-core" disputes. 28 U.S.C. § 157(b).[17] This attempt by Congress was probably predicated upon the following passage in *Marathon:*

(Bankr.Neb.1985), *rev'd* 62 B.R. 439 (D.Neb. 1986).

**17.** 28 U.S.C. § 157.  Procedures
(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
(2) Core proceedings include, but are not limited to—
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

Appellants argue that a discharge in bankruptcy is indeed a "public right," similar to such congressionally created benefits as "radio station licenses, pilot licenses, or certificates for common carriers" granted by administrative agencies. [citation]  But the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
(3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.  A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.
(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).
(5) The district shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.
(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.  In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.
(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

at issue in this case. *The former may well be a "public right," but the latter obviously is not.* 458 U.S. 50, 71, 102 S.Ct. 2858, 2871 (emphasis added).

In my estimation, the 1984 Amendments pass constitutional muster because they fall within the adjunct exception to of Article III, Section 1. Therefore it is unnecessary for me to discuss Congress' attempt to characterize certain bankruptcy disputes as "public rights" disputes.[18]

Based upon the foregoing, I conclude that my exercise of judicial power under § 329 and the 1984 Amendments does not violate Article III, Section 1.

4. Does Article III, Section 1 Prohibit Bankruptcy Judges from Conducting Trials by Jury?

A controversy now exists among three courts of appeal over whether Article III, Section 1 prohibits bankruptcy judges operating under the 1984 Amendments from conducting trials by jury. *In re Kaiser Steel Corp.,* 911 F.2d 380 (10th Cir. 1990) (the 1984 Amendments do not authorize bankruptcy judges to conduct jury trials in core proceedings); *In re United Missouri Bank of Kansas City, N.A.,* 901 F.2d 1449 (8th Cir.1990) (the 1984 Amendments do not expressly or implicitly authorize bankruptcy judges to conduct jury trials in core proceedings); *In re Ben Cooper, Inc.,* 896 F.2d 1394 (2d Cir.1990) (the 1984 Amendments authorize bankruptcy judges to conduct jury trials in core proceedings and do not violate Article III, Section 1 in doing so); *vacated and remanded,* —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990) (Supreme Court vacated judgment and remanded on ground that Court of Appeals should have first addressed the jurisdictional issue, and remanded for Court of Appeals to consider jurisdictional issue); *opinion on remand,* 924 F.2d 36 (2nd Cir.1991) (Court of Appeals held that

it had jurisdiction); *cert. denied,* —— S.Ct. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). The debate has been framed as follows: Do bankruptcy judges operating under the 1984 Amendments have sufficient authority, either express or implicit, to exercise the judicial power of the United States in conducting a jury trial? The problem I perceive in this debate is the same problem I perceive in the Appellate Order—a failure to examine carefully the premise upon which the analysis is based.

None of the above-cited decisions concerning this issue provide any convincing authority for the untested premise that conducting a trial by jury is an exercise of the judicial power of the United States. I suggest, for the reasons stated below, that trial by jury is not at all an exercise of judicial power; rather, it is the opposite—a check on the exercise of judicial power that is constitutionally guaranteed to citizens engaged in civil litigation in a cause of action that would have been heard by an 18th century English court of law.

The Constitution does not define the judicial power of the United States. The *Marathon* court, in analyzing the deficiencies of the 1978 Bankruptcy Reform Act, noted that the Act authorized "the bankruptcy courts [to] exercise all ordinary powers of district courts, including the power to preside over jury trials ..." 458 U.S. 50, 85, 102 S.Ct. 2858, 2878. The Court in *Marathon* did not conclude, however, that if Congress authorized non-Article III judges to conduct jury trials, that in and of itself would violate Article III, Section 1. *In re Gaildeen,* 59 B.R. 402, 407 (N.d Cal.1986). Nor did the *Marathon* Court conclude that conducting jury trials was a form of judicial power that could only be exercised by Article III protected judges [19]. Rather, the Court concluded that the grant of judicial power in the 1978 Bankruptcy Reform Act viewed as a whole violated the protections

---

18. The exception to Article III, Section 1 alluded to by the district judge in the Williams Order must be the public rights exception. Because the district judge never states so, I cannot be sure. *See, Appellate Order,* 124 B.R. 301, 303.

19. The Court has concluded that federal judges who do not have the protections of Article III,

Section 1 may conduct jury trials without violating the policies underlying Article III. *Pernell v. Southall Realty,* 416 U.S. 363, 367, 94 S.Ct. 1723, 1725, 40 L.Ed.2d 198 (1974) (Article III does not prohibit District of Columbia Article I judges from conducting jury trials).

of Article III, Section 1. *In re Gaildeen,* 59 B.R. 402, 407; *In re Stoecker,* 117 B.R. 342, 344–45 (N.D.Ill.1990).

Indeed, in *Granfinanciera* the Court held that:

> One cannot easily say that 'the jury would be incompatible' with bankruptcy proceedings, in view of Congress' express provision for jury trials in certain actions arising out of bankruptcy litigation. [Citations] And Justice White's claim that juries may serve usefully as checks only on the decisions of judges who enjoy life tenure, [Citation] overlooks the extent to which judges who are appointed for fixed terms may be beholden to Congress or executive officials, and thus ignores the potential for juries to exercise beneficial restraint on their decisions. 109 S.Ct. 2782, 2801.

The Court's conclusion in *Granfinanciera* that jury trials constitute a check on judicial power, rather than an essential attribute of it, is supported by examining the historical underpinnings of the Seventh Amendment. The best analysis of these matters I have found is Wolfram, "The Constitutional History of the Seventh Amendment," 57 Minn.L.Rev. 639 (1973) (*"Wolfram"*).

Wolfram examined the debates that preceded the enactment of the Seventh Amendment in the constitutional convention of 1787 and the ratification debates that followed in the state legislatures. This historical analysis uncovered no basis for characterizing the conducting of a jury trial as an exercise of judicial power. To the contrary, the Seventh Amendment was added to the Constitution to protect citizens from the unwise or autocratic exercise of power by the government in general, and the judiciary in particular. According to Wolfram, there were three specific reasons important to the framers for enacting the Seventh Amendment:

a. Protecting debtor/defendants from foreign or out-of-state creditors by providing those defendants with a right to a trial by a jury of their neighbors;

b. Allowing citizens to overturn by jury vote oppressive or unwise laws, i.e., those imposing exorbitant taxation; and

c. Checking the power of autocratic or corrupt judges. *Wolfram,* 673–710.

I can see no logical relationship between Article III, Section 1 and the Seventh Amendment in determining whether bankruptcy judges can conduct jury trials under the 1984 Amendments. As discussed in Section III, E,2 above, the Court has determined that the purpose of Article III is to protect the judicial branch from encroachment from the legislative and executive branches of the federal government. The Seventh Amendment was enacted to protect citizens from inappropriate exercises of power by all three branches of government, including the judiciary. It is therefore difficult to understand how one can rationally characterize the conducting of a jury trial as an exercise of judicial power when it is clearly designed to check the exercise of judicial power.

Based on the foregoing, I conclude that there is nothing inconsistent with the language of the Seventh Amendment, the purposes for the enactment of the Seventh Amendment as expressed by its framers as well as the holdings of the Court in *Marathon* and *Granfinanciera,* and bankruptcy judges exercising the judicial power of the United States under the 1984 Amendments by conducting jury trials in core [20] proceedings. *See also, In re Jackson,* 118 B.R. 243 (E.D.PA.1990) (allowing bankruptcy judges to conduct jury trials in core proceedings creates "no constitutional dangers" and constitutes sound judicial administration).

## IV.

### CONCLUSION

I conclude that the appellate authority exercised by the district judge in issuing

---

**20.** Under the 1984 Amendments, bankruptcy judges are authorized to enter final orders in core proceedings. 28 U.S.C. § 157. In non-core proceedings, bankruptcy judges' findings of fact and conclusions of law are subject to de novo review by district judges. *Id.* Thus under the plain language of the Seventh Amendment, bankruptcy judges cannot conduct jury trials in non-core proceedings. *In re Cinematronics,* 916 F.2d 1444 (9th Cir.1990).

the Appellate Order does not bind my determination of the issues in the Medill Order pursuant to *stare decisis.* I also conclude that the reasoning underlying the Appellate Order is not persuasive and that § 329 does not resemble any cause of action heard by 18th century English courts of law and that neither Article III, Section 1 nor the Seventh Amendment prohibit bankruptcy judges from exercising the judicial power of the United States under the 1984 Amendments to hear actions at law or to conduct jury trials in core proceedings.

I also conclude that bankruptcy judges, district judges and circuit judges are expending a disproportionate share of their limited judicial resources in considering and deciding the issues I have addressed above. This has a deleterious impact on the courts, lawyers, and those millions of citizens whose lives are affected by the bankruptcy court system. What is required is a definitive solution from the Court or the Congress before we revisit the chaos that engulfed the bankruptcy court system in the wake of *Marathon.*