In the Matter of Robert R. KAWCZYN-SKI d/b/a Bob Kawczynski Builders, Bankrupt.

**BESROI CONSTRUCTION CORP.,**
Plaintiff-Appellant,

v.

**Robert R. KAWCZYNSKI,**
Defendant-Appellee.

**COR–WYN LUMBER COMPANY, DIVISION OF BUSY BEAVER BUILDING CENTERS, INC., Plaintiff-Appellant,**

v.

**Robert R. KAWCZYNSKI,**
Defendant-Appellee.

No. BK–75–2884.

United States District Court,
W. D. New York.

Dec. 14, 1977.

---

Rachlin & Rachlin, Buffalo, N. Y. (Harry A. Rachlin, Buffalo, N. Y., of counsel), for plaintiffs-appellants.

Ohlin, Damon, Morey, Sawyer & Moot, Buffalo, N. Y. (James N. Schmit, Buffalo, N. Y., of counsel), for defendant-appellee.

CURTIN, Chief Judge.

This case is before the court on appeal from a decision of the Bankruptcy Court denying the appellants' applications to declare certain debts of the bankrupt nondischargeable in bankruptcy. For the reasons stated below, the Bankruptcy Court's decision is reversed.

Prior to his bankruptcy, the debtor was engaged in the business of building homes. The complaints in this case relate to debts he incurred in constructing two residences, one in Evans, New York, and one in Clarence, New York. Appellant Besroi Construction Corp. [Besroi], one of the debtor's subcontractors, installed the roofs on the Evans and Clarence homes but was never paid for its work. Appellant Cor-Wyn Lumber Company [Cor-Wyn], one of the debtor's suppliers, furnished building materials for the construction of the two homes. Cor-Wyn also was not paid.

In the schedules accompanying his bankruptcy petition, the debtor listed the debts to Besroi and Cor-Wyn as unsecured obligations. His verified statements indicated that he had received $14,538.00 from the owners of the Clarence home, of which $11,-034.70 was used to pay suppliers and subcontractors and $3,503.30 was used for other business purposes. The Evans homeowners had paid the debtor $14,000.00, of which $4,920.89 was disbursed to suppliers and subcontractors, and $9,079.11 was used for other business purposes. Both Cor-Wyn and Besroi filed timely applications to determine the dischargeability of their debts. In a decision dated November 19, 1976, the Bankruptcy Court denied the applications and declared the debts dischargeable.

■ Section 17(a)(4) of the Bankruptcy Act provides that debts created by the bankrupts' "fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity," are not dischargeable in bankruptcy proceedings. Under the New York Lien Law, funds received by general contractors for the improvement of real property must be held in trust for the benefit of the subcontractors and suppliers. N.Y. Lien Law §§ 70–79a. The statute imposes certain fiduciary duties on contractors in handling the funds, and requires that trust funds be used to pay subcontractors and suppliers before other business expenses are discharged. Failure to comply with the statute constitutes a diversion of trust funds, which is punishable as larceny. *Id.*

It is undisputed in this case that the debtor breached his duties under the Lien Law by using some of the funds received from the Evans and Clarence homeowners for purposes other than paying the appellants. The sole issue is whether the statutory trust created by the Lien Law establishes a fiduciary relationship within the meaning of § 17(a)(4) of the Bankruptcy Act. The appellants argue that the debtor's failure to hold the funds in trust for the appellants constituted a "defalcation while acting [in a] fiduciary capacity" under § 17(a)(4), as a result of which the debts are not dischargeable. The debtor, on the other hand, contends that the statutory trust imposed by the Lien Law does not give rise to a fiduciary relationship within the meaning of § 17(a)(4), and urges the court to affirm the Bankruptcy Court's decision.

■ The courts have consistently found that § 17(a)(4) is limited in its application to express, technical, or special trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity. *Davis v. Aetna Acceptance Company*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844); 1A *Collier on Bankruptcy* ¶ 17.24, at 17.08 (14th ed. 1976). To qualify as a fiduciary under § 17(a)(4), the trustee must have duties which are independent of any contractual obligations between the parties and which are imposed prior to rather than by virtue of any claim of misappropriation of trust funds. *Id.*

■ Although the courts interpreting § 17(a)(4) have never clearly defined an express trust, its most common elements traditionally have included an explicit declaration of trust, a clearly defined trust res, and an intent to create a trust relationship. 89 C.J.S. Trusts § 22, at 734–35 (1955). In contrast, an implied trust is not a genuine fiduciary relationship but a remedial device imposed by the courts in order to prevent fraud or unjust enrichment. *Id.* § 139, at 1015.

Several cases cited by the parties illustrate how the distinction between an express and an implied trust has been applied by the courts to statutory trusts. In *Allen v. Romero (In re Romero)*, 535 F.2d 618 (10th Cir. 1976), the Tenth Circuit construed a New Mexico statute providing for revocation of a contractor's license if funds advanced by the owners for the completion of the contract were used for other purposes. Holding that the statute imposed a fiduciary duty upon contractors within the ambit of § 17(a)(4), the court analyzed the questions as follows:

It is undisputed that Romero [the bankrupt] was advanced $49,950 by Allen [the owner]. By virtue thereof, Romero stood in a fiduciary capacity toward Allen. Romero was under a duty to assure that money advanced to him was applied in payment for materials and labor relating to the four-plexes. That Romero was acting in a fiduciary capacity imposed by law, rather than one implied by law, is evidenced by the fact that his obligation not to divert advances is imposed by statute. The fiduciary capacity in which Romero was acting accordingly existed independent of any express understanding he had with Allen governing the same obligation. Obtaining a state license by a contractor is a prerequisite to entering the construction industry in New Mexico; accordingly, the obligation and duties imposed under § 67–35–26, *supra*, were binding upon Romero prior to any dealings he had with Allen. We hold that the Bankruptcy Court's finding that Romero was acting in a fiduciary capacity within the meaning of § 17(a)(4), *supra*, is not clearly erroneous.

535 F.2d at 621–22.

*Schlecht v. Thornton (In re Thornton)*, 544 F.2d 1005 (9th Cir. 1976), involved an Oregon statute declaring it unlawful for an employer who agreed in writing to make payments to an employee benefit fund to fail to remit the payment deductions in breach of the agreement. The court stated that "[t]he intent to create a trust relationship rather than a contractual relationship is the key element in determining the existence of an express trust." 544 F.2d at 1007. Since the bankrupt employer's obligation to make payments to the trustees of the fund resulted from a collective bargaining agreement and was not imposed by the statute, the court found that the relationship was purely contractual in character. Noting that Oregon Law did not impose a trust on the employer until a misappropriation had occurred, the court classified the trust as one imposed *ex maleficio* and refused to find a fiduciary relationship between the bankrupt employer and the trustees of the fund.[1]

---

1. The court did not reject the principle that some statutory trusts create fiduciary relationships under the Bankruptcy Act, but rather based its conclusion on an analysis of the duties imposed by the particular statute in question.

The appellants argue that *In re Romero, supra*, should govern in this case, whereas the debtor relies on *In re Thornton, supra*, and similar cases. The determination of whether a given statute creates an express or an implied trust for purposes of § 17(a)(4), however, requires an examination of the provisions of the statute in question and the nature of the fiduciary relationship established.

■ Turning to the New York Lien Law, it is clear that the mechanism created for protecting the claims of subcontractors, laborers, and suppliers contains the key elements of an express trust. The trust relationship need not be implied but is expressly imposed on general contractors by unambiguous statutory language. N.Y. Lien Law § 70. The trust res is clearly defined. *Id.* Unlike implied trusts, the trustee is charged with extensive, affirmative duties in managing the trust, including the duties of keeping detailed records and segregating the trust funds. *Id.* §§ 74–75. Failure to turn funds over to the trust beneficiaries within the specified period of time constitutes larceny. *Id.* § 79–a.

Although in this case there is no trust agreement between the parties, this is an inherent feature of a statutory trust. The parties became constructively charged with an intent to create a trust relationship by making a contract subject to the Lien Law. *In re Romero, supra*, demonstrates and *In re Thornton, supra*, acknowledges that the application of § 17(a)(4) is not limited to nonstatutory express trusts.

The Lien Law also meets the requirement that the trustee's fiduciary duties exist independently of any contractual obligations. It is true that until the contractor obtains payments from the owner, he is liable to his subcontractors and suppliers solely on the basis of their contractual arrangements. Once the owner makes payments, however, the contractor takes on new fiduciary obligations in addition to and independent of his contractual duties: he must segregate and keep records of trust funds, and pay them out according to a statutory priority scheme. These obligations result not from any contractual agreements but solely from the statute. *Clark and Rapuano, Inc. v. Morris Ketchum, Jr. and Assoc. (In re Morris Ketchum, Jr. and Assoc.)*, 409 F.Supp. 743 (S.D.N.Y.1975).

■ In addition to creating independent fiduciary duties, the Lien Law makes clear that the trust arises prior to rather than by virtue of any claim of misappropriation of trust funds. Section 70(3) provides that the trust commences when the contractor first receives payment from the owner, "whether or not there shall be at that time any beneficiary of the trust," and continues until all of the trust beneficiaries have been paid. Although the debtor cites several cases suggesting that the statute only imposes a trust on funds after the contractor breaches his statutory duties [*Metropolitan Sand & Gravel Corp. v. Lipson*, 7 A.D.2d 916, 182 N.Y.S.2d 934 (2d Dept. 1959); *Ryan Ready Mixed Concrete Corp. v. Caristo*, 158 N.Y. S.2d 451 (Sup.Ct.1956); *Frank Sheridan Jonas, Inc. v. Romanat*, 144 N.Y.S.2d 248 (Sup.Ct.1955), *aff'd*, 1 A.D.2d 949, 151 N.Y. S.2d 602 (1st Dept. 1956)], these cases were decided prior to the 1959 amendment adding § 70(3) and therefore do not reflect the current law.

At least one other court has determined that the New York Lien Law creates a fiduciary relationship between the trustee and the trust beneficiaries for purposes of § 17(a)(4) of the Bankruptcy Act. On virtually identical facts, Judge Gagliardi in *In re Morris Ketchum, supra*, held that a general contractor's debt to a subcontractor is not dischargeable in bankruptcy. *See also, Reed v. Angelle (In re Angelle)*, 425 F.Supp. 823 (W.D.La.1977).

■ The only remaining question is whether the bankrupt's use of the funds in question for purposes other than paying the appellants constituted a "defalcation" within the meaning of § 17(a)(4) of the Bankruptcy Act. Although the funds were used for legitimate business purposes such as paying various overhead expenses, these payments nevertheless amounted to a diversion of trust funds under § 72 of the Lien

418

Law. *Naiztat Iron Works, Inc. v. Tri-Neck Construction Corp.*, 62 Misc.2d 228, 308 N.Y.S.2d 427 (Sup.Ct.1970). "Defalcation" has been interpreted by the Second Circuit to include innocent defaults. *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir. 1937). Accordingly, the court finds that the bankrupt's debts to appellants are nondischargeable under § 17(a)(4).

The Bankruptcy Court's reliance on *In re Titus*, 2 Bankr.Ct.Dec. 554 (No. 75–91402–B 1976), was misplaced. In that case, a Michigan Bankruptcy Judge construed a statute making an insurance agent a fiduciary for all premiums collected on behalf of the general agent, and found that it did not create a fiduciary relationship under § 17(a)(4). His reasoning was not based on statutory construction, but focused primarily on the Bankruptcy Act policy of affording an honest debtor a fresh start by limiting the number of nondischargeable debts.[2] The Bankruptcy Court's decision in this case similarly emphasized the apparent unfairness of penalizing the bankrupt for covering such legitimate business costs as overhead before paying subcontractors and suppliers. This policy judgment, however, has already been made by the New York Legislature, and is reflected in the statutory scheme requiring the contractor to act as the fiduciary manager of payments received from the owner for the benefit of subcontractors and suppliers. The statute was intended to prevent the very result that occurred in this case. Although the court may not agree with the policy decision made by the Legislature, it has no choice but to abide by it.

The decision of the Bankruptcy Court is reversed.

So ordered.

---

**2.** Other courts construing similar insurance statutes have reached the opposite conclusion. *See* cases cited in 1A *Collier on Bankruptcy* ¶ 17.24, at 1709–10 n. 15 (14th ed. 1976).