In re SHATTUC CABLE
CORPORATION,
Debtor.

**Bankruptcy No. 91 B 10487.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

April 16, 1992.

Scott W. Wilton, Williams, Rutstein, Goldfarb, Sibrava & Midura, Chicago, Ill., for petitioner.

Robert D. Nachman, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for respondent.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on the Motion of North American Plastics, Inc., for an order awarding it a lien or, alternatively, an administrative claim in lieu of reclamation of goods delivered to the Debtor prior to the filing of these bankruptcy proceedings, pursuant to § 546(c) of the Bankruptcy Code. Responses to the Motion were filed by the Debtor and by American National Bank, a secured creditor holding a prior perfected security interest in all of the Debtor's assets. The Movant filed a Reply and this matter was taken under advisement. The Court has jurisdiction over this matter pursuant to title 28 U.S.C. § 157(b)(2)(B) and (K); 28 U.S.C. § 1334 and 11 U.S.C. § 546 (1990).

Having fully considered the arguments of the parties, the Court hereby finds that North American Plastics is not entitled to either a lien against the Debtor's assets or administrative claim treatment since any right of reclamation it held was subject to and extinguished by the prior security interest of American National Bank. To the extent that the district court decision in *Bosler Supply Group,* 74 B.R. 250 (N.D.Ill.

1987), holds differently, this Court finds that it is not bound by the decision of the district court under the principle of *stare decisis*. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FACTS

An involuntary Chapter 7 petition was filed against the Debtor on May 15, 1991, by the following four petitioning creditors: Group Dekko International, Inc., d/b/a Albion Wire, Inc.; Global Products Corp.; Vanessa Calabrese; and North American Plastics, Inc. The Debtor converted the involuntary Chapter 7 case to a voluntary Chapter 11 proceeding and an order for relief was entered on May 24, 1991.

Prior to the filing of the involuntary petition, North American Plastics, Inc., (hereinafter referred to as "NAP"), one of the petitioning creditors, sold goods to the Debtor on an open account for which it never received payment. NAP asserts that goods with a value of $22,647.10 were delivered to the Debtor on March 29, 1991, pursuant to an invoice and bill of lading attached to its Motion. According to NAP, it received a check from the Debtor shortly after March 29, 1991, in the amount of $24,818.56 as payment for goods previously delivered on January 30, 1991, to the Debtor on its open account.[1] This check, however, was not honored by the Debtor's bank and it was returned to NAP on or about April 3, 1991, marked "Not Sufficient Funds." NAP did not thereafter receive any funds for this NSF check, or any other form of payment for the outstanding balance on the open account. Specifically, NAP never received any form of payment for the goods shipped on March 29, 1991.

On April 4, 1991, NAP made a written demand upon the Debtor for reclamation of the March 29th shipment of goods pursuant to § 2–702 of the Uniform Commercial Code. The Debtor has stipulated that (1) it received the written reclamation demand on April 4, 1991; (2) all of the goods delivered by NAP on March 29, 1991, were in its possession at the time it received the reclamation demand; and (3) for purposes of this proceeding, the Debtor was insolvent as of March 29, 1991.

The Debtor refused to surrender the goods to NAP pursuant to the reclamation demand on the grounds that American National Bank held a prior, perfected security interest in all of the Debtor's inventory which prevented it from returning the goods to NAP. NAP and the other petitioning creditors then initiated the involuntary bankruptcy proceedings against the Debtor on May 15, 1991, and the Debtor converted those proceedings to a voluntary Chapter 11 proceeding on May 24, 1991.

Following the commencement of these bankruptcy proceedings, American National Bank (hereinafter referred to as "Bank"), asserted a secured claim against the Debtor and sought to enforce a security interest in all of the Debtor's assets, including the goods delivered on March 29th by NAP. The secured claim of the Bank is based on an installment note dated August 9, 1990, in the original principal sum of $278,350.17, and a demand note dated February 7, 1989, in the original principal sum of $800,000. These notes were secured by a blanket first-lien and security interest in all the assets of the Debtor,

> whether now or hereafter existing or acquired, including all accounts, accounts receivable, notes, conditional sales contracts, furniture, fixtures, contract rights, inventory, goods, insurance policies covering such collateral, deposits, leases, intangibles, instruments, documents, chattel paper, various specifically identified items of equipment, and all proceeds from any of these assets.

---

1. The Debtor asserts, in its response, that the check in question was issued as payment for the goods delivered on March 29, 1991. The Court need not resolve this apparent factual inconsistency since it is admitted that the check did not clear the Debtor's bank and NAP is only seeking to recover $22,647.10, the value of the March 29th delivery. The existence of any prior shipments and outstanding balances is not relevant to NAP's reclamation claim under § 546(c) of the Bankruptcy Code or § 2–702 of the Uniform Commercial Code since the Debtor has stipulated that it was insolvent at the time it received the goods.

Several security agreements were executed covering these assets, and the security interests granted therein were properly perfected through the filing of financing statements, the latest of which is dated February 1, 1991.

In addition to these pre-existing claims asserted by the Bank in the Debtor's bankruptcy proceeding, the Bank extended post-petition financing to the Debtor in the amount of $38,925.91, pursuant to Order of this Court, and was granted a super-priority lien and security interest in the Debtor's assets pursuant to § 364 of the Bankruptcy Code to secure the post-petition financing.[2]

Although the Debtor voluntarily converted the involuntary Chapter 7 proceeding to a Chapter 11 case, it did not attempt to reorganize its business. Rather, the Debtor sought an order from the Court authorizing it to sell substantially all of its assets pursuant to § 363 of the Bankruptcy Code. The order authorizing the sale recognized the pre-existing secured claims of the Bank (although it expressly did not adjudicate the priority or amount of the claims)[3] and found that it was in the best interests of the estate and its creditors to allow the Debtor to sell its machinery, equipment and inventory since the Debtor was unable to obtain additional secured or unsecured financing from the Bank or any other entity and was unable to maintain the operation of its business without such financing. The Order further provided that all proceeds of the sale would be paid directly to the Bank to be applied to the outstanding indebtedness on a provisional basis which would not "prejudice either the rights of any party in interest from asserting any claim or lien against the proceeds, or the right of [the Bank] to assert defenses to any alleged claims or liens."

The auction sale was held on June 10, 1991, and the Debtor received a total of $442,500 for its assets. Among the assets sold were all of the goods listed on the bill of lading and invoice from NAP, except for two groups of clear pvc which were used in the ordinary course of the debtor's business prior to the auction sale. Thus, upon completion of the auction sale, the Debtor no longer held any of the goods at issue in this proceeding. The auction sale, as ultimately consummated, was approved by this Court on June 20, 1991, and the proceeds were paid to the Bank on a provisional basis as authorized by the Court.

In October, 1991, the Bank and the Debtor came before the Court seeking allowance of the secured claims of the Bank and approval for the payment of the final amounts owed to the Bank. The Bank had been partially paid through the sale proceeds and through the collection of certain accounts receivable subject to its security interest. The remaining balance due, therefore, was $45,118.35. After notice and hearing, the Court entered an Agreed Order on October 28, 1991, which approved the secured claims of the Bank for a total allowed secured claim of $756,162.33; approved the earlier provisional payments pursuant to the sale of the Debtor's assets as being free and clear of the claims of any third parties; and authorized the Debtor to remit the remaining balance due of $45,185.35, in full satisfaction of the allowed secured claims of the Bank. The Service List and Certificate of Service filed with the Motion to allow the Bank's claims and seeking entry of the agreed order reflects that notice was given to NAP and to all other creditors in this proceeding. The court docket further reflects that no objection to the Motion or Order was filed by NAP.

NAP thereafter filed the instant Motion for a Lien or for Payment as an Administrative Claim on December 26, 1991. The

---

**2.** The post-petition financing was advanced by the Bank for the express purpose of assisting the Debtor in the sale of substantially all of its assets and to allow the continued operation of the Debtor's business until the date of the sale. The Court approved the Bank's post-petition advance of $23,000 plus the costs of advertising the public sale in exchange for a super-priority lien on the assets in the Order authorizing the sale dated May 24, 1991.

**3.** As discussed *infra* at p. 559, the secured claims asserted by the Bank, including the post-petition lending were ultimately allowed by this Court without objection by any party to this proceeding.

Motion asserts that pursuant to § 546(c) of the Bankruptcy Code, NAP is entitled to either a lien on the Debtor's assets or to status as an administrative claim in lieu of reclamation of the goods sold by the Debtor.

## DISCUSSION

■ NAP relies upon § 546(c) of the Bankruptcy Code [hereinafter "Code"] which allows a seller to reclaim goods from the debtor pursuant to any statutory or common-law right of reclamation it may have as long as (1) the debtor received such goods while it was insolvent and (2) the seller made a written demand for reclamation within 10 days of receipt of the goods by the debtor. Specifically, § 546(c) provides that:

the [avoidance] powers of the trustee … are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

(B) secures such claim by a lien.

Under this provision, the Court may deny reclamation to an otherwise entitled seller only if the Court grants priority to the seller's claim under § 503(b) or if the Court secures the seller's claim by a lien against the debtor's property. NAP asserts, therefore, that since it made a timely, written demand for reclamation upon the Debtor for goods received while the Debtor was insolvent, asserting its statutory right of reclamation under the Uniform Commercial Code [hereinafter "UCC"], the Court must either grant NAP a lien upon the Debtor's assets, or grant NAP an administrative claim equal to the value of the goods as a condition of the denial of the reclamation demand. NAP acknowledges in its reply that the Bank has asserted a prior existing security interest in the goods but it claims that the priority of the Bank is a non-issue which does not affect its reclamation rights. Specifically, NAP argues that its rights are merely subordinated to those of the Bank but not extinguished by the existence of the secured creditor even though reclamation is expressly subject to the prior lien holder's claim. NAP concludes, therefore, that its reclamation right must be upheld under § 546(c) of the Code through the grant of either a lien equal in value to the goods or an administrative claim.

The Debtor and the Bank, however, respond that NAP's rights have been extinguished by operation of law since the Bank qualifies as a good faith purchaser under § 2–403 of the UCC. The crux of this argument is that there can be no statutory right of reclamation since that right was extinguished by the intervening rights of the secured party under the terms of the UCC reclamation statute itself. Assuming therefore that the seller has no independent right of reclamation, it is not entitled to relief under § 546 since this provision merely enforces reclamation rights created by other applicable law but does not enlarge or create additional reclamation rights independent of such other applicable law.

### A. The Right of Reclamation

This Court is not the first to address this issue. Similar arguments have been raised in other jurisdictions.[4] There are two conflicting opinions in this district which are directly on point: *In re Bosler Supply*

---

4. *See e.g., In re Western Farmers Association,* 6 B.R. 432 (Bankr.W.D.Wash.1980); *In re Wathen's Elevators, Inc.,* 32 B.R. 912 (Bankr.W.D.Ky. 1983); *Matter of Bensar Co., Inc.,* 36 B.R. 699 (Bankr.Ohio 1984); *In re FCX, Inc.,* 62 B.R. 315 (Bankr.E.D.N.C.1986); *contra U.S. v. Westside Bank,* 732 F.2d 1258 (5th Cir.1984).

*Group,* 74 B.R. 250 (N.D.Ill.1987),[5] issued by the District Court, and *In re Video King,* 100 B.R. 1008 (Bankr.N.D.Ill.1989), issued by the Bankruptcy Court.

### 1. Bosler Supply

The facts in *Bosler Supply* are virtually identical to the case at bar. The seller delivered goods to the debtor in the ordinary course of business pre-petition at a time when the debtor was insolvent and the seller was never paid for these goods. The seller made a written demand for reclamation upon the debtor within 10 days of the debtor's receipt of the goods and the debtor was in possession of all of the goods at the time it received the reclamation demand. The assets of the Debtor were subject to a pre-existing security interest of a secured lender which was properly perfected and which covered all of the debtor's inventory. The debtor declined to comply with the reclamation demand and refused to return the goods to the seller. A portion of the goods were subsequently sold by the debtor in the ordinary course of business and, following the filing of the bankruptcy petition, the remainder were sold in a bulk sale of substantially all of the debtor's assets with the approval of the bankruptcy court. It was agreed that the bulk sale would be free and clear of any reclamation rights the seller might have and that any such claim would attach to the proceeds of sale. The seller thereafter filed an adversary complaint seeking turnover of the proceeds of sale or turnover of the goods.

In a concise and straightforward opinion, the Bankruptcy Court found that (1) the holder of a prior, perfected security interest in after-acquired property constitutes a good faith purchaser; (2) the seller's reclamation rights are subject to those of the good faith purchaser under the terms of the reclamation statute itself so that the existence of such a prior lien extinguishes any such reclamation rights; and (3) § 546(c) does not enlarge or create any additional right of reclamation but merely

allows the seller to assert its rights under other applicable law and provides that the debtor may keep and use the goods despite such rights as long as the Court gives some assurance of payment for the reclamation claim to the seller. *In re Bosler Supply Group,* 67 B.R. 71 (Bankr.N.D.Ill. 1986). Thus, the Bankruptcy Court held that although the seller made a timely written demand for reclamation of goods received by the debtor while insolvent, the seller had no right to reclaim the goods because they were subject to a superior lien against the debtor's after-acquired property which extinguished the seller's right of reclamation and prevented the court from granting any relief to the seller under § 546(c).

This decision, however, was reversed by the District Court in *In re Bosler Supply Group,* 74 B.R. 250 (N.D.Ill.1987). The District Court reasoned that although the UCC provides that the seller's right of reclamation is subject to the rights of a buyer in ordinary course or other good faith purchaser, this provision does not extinguish the right of reclamation but merely shifts the seller's rights to a lower priority position which must still be recognized in bankruptcy proceedings through the grant of a lien or an administrative claim. Quoting *In re Wathen's Elevators, Inc.,* 32 B.R. 912 (Bankr.W.D.Ky.1983), the District Court noted that

> to say that reclamation is "subject to" superior claims is neither to deny the validity of the seller's rights nor to bar their claims. Rather the effect of this language is to eliminate their first position and relegate the sellers to some less commanding station.

74 B.R. at 253. The Court went on to state that § 546(c) protects such sellers by providing that

> when reclamation is denied to a seller with an otherwise valid right—where, for example, as here, the goods were subject to a senior secured claim—the Court may do so only by granting that seller an

---

**5.** The District Court reversed the decision of the Bankruptcy Court reported at 67 B.R. 71

(Bankr.N.D.Ill.1986).

562

alternative form of relief. [Section 546(c) ] contemplates a lien equal in value and effectiveness to the right of reclamation at the time it was asserted.

*Id.* at 253.

The District Court in *Bosler Supply* held, therefore, that although the seller's ability to exercise its right of reclamation was cut-off by the prior lien of the secured creditor, the right was not extinguished merely because it was subject to the lienholder's rights as a good faith purchaser, and the Bankruptcy Court could not deny reclamation by such a seller in the bankruptcy proceeding unless it provided alternative relief in the form of a lien or an administrative claim under § 546(c) equal to the value of the goods without any reduction for the secured creditor's priority position.

This Court respectfully disagrees with the conclusion reached by the District Court in *Bosler Supply.* The effective result of the *Bosler Supply* holding is to enlarge the statutory right of reclamation given to sellers under the Uniform Commercial Code and it is clear that this result is not consistent with the intended scope of § 546(c). A thorough review of the reclamation provisions of the UCC demonstrates that the rights of a good faith purchaser, such as a prior secured creditor under an after-acquired property clause, cut-off the seller's reclamation rights and extinguish that extraordinary remedy.

### 2. *Uniform Commercial Code § 2–702*

Section 2–702(2) of the Uniform Commercial Code, as enacted in Illinois, provides that:

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's

fraudulent or innocent misrepresentation of solvency or intent to pay.

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this Article (Section 2–403). Successful reclamation of goods excludes all other remedies with respect to them.

Ill.Rev.Stat. ch. 26, ¶ 2–702 (1989).

Under this provision, a seller is granted special protection in the form of the right to reclaim goods delivered when the goods were received by the buyer while insolvent as long as the seller makes a timely demand within 10 days of the buyer's receipt. This is an extraordinary remedy which constitutes preferential treatment as against the buyer's other creditors and exercise of the reclamation right, therefore, bars all other remedies the seller may have under the UCC. Ill.Rev.Stat. ch. 26, ¶ 2–702(3) (1989), *Official Comment* ¶ 3.

The right of reclamation is also subject to the special protection given to a buyer in the ordinary course, or other good faith purchaser, under § 2–403 of the UCC.

Section 2–403(1) states that:

A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered through a transaction of purchase the purchaser has such power even though

(a) the transferror was deceived as to the identity of the purchaser, or

(b) the delivery was in exchange for a check which is later dishonored, or

(c) it was agreed that the sale was to be a cash sale, or

(d) the delivery was procured through fraud punishable as larcenous under criminal law.

Ill.Rev.Stat. ch. 26, ¶ 2–403 (1989). Under this provision, a good faith purchaser for value is given good title which takes priority over the ownership rights of other par-

ties. Section 2–702 expressly provides that reclamation is subject to the intervening rights of such a good faith purchaser so that the seller is left with only such other non-possessory remedies as are provided for in the UCC. Assuming, therefore, that a secured creditor holding a pre-existing security interest in all of the buyer's after-acquired property constitutes a good faith purchaser, the seller's right of reclamation is subject to and extinguished by that right.[6] There is simply no other interpretation of these provisions which is consistent with the overall scheme of the UCC and the intended role of the seller's right of reclamation within that scheme.

Reclamation is in the nature of an *in rem* property right and if it cannot be exercised due to the superior title vested in a good faith purchaser, then it must necessarily be extinguished. It cannot be preserved and asserted in some later proceeding against general unsecured creditors. Such treatment is consistent with the overall scheme of the UCC which seeks to protect good faith purchasers above all other parties and yet still provide remedies to sellers against insolvent buyers. The good faith purchaser gets title to and possession of the goods under § 2–403 and the seller is denied reclamation under § 2–702(3), but the seller is still protected by virtue of his other remedies against the buyer for breach of contract due to nonpayment. In particular, § 2–709 provides the seller with the remedy of an action for payment of the price and any incidental damages when the buyer fails to pay for goods accepted. A seller who is unable to reclaim his goods

due to the intervening rights of a good faith purchaser is still protected by the UCC under § 2–709 which allows him to sue for payment of the purchase price and incidental damages. Thus, this Court concludes that NAP has no right of reclamation under the UCC which can be asserted in this bankruptcy proceeding pursuant to § 546(c) of the Code since its reclamation rights are subject to and were extinguished by the superior claim of the Bank as a good faith purchaser.

This conclusion is supported by the literal language of § 546(c). Section 546(c) provides that the Court must enforce "any statutory or common-law right of a seller ... to reclaim such goods if the debtor has received such goods while insolvent ... [as long as] the seller demands in writing reclamation of such goods before 10 days after receipt of such goods by the debtor." Under this language, the right protected under § 546(c) must arise independently under statutory or common-law. Section 546 does not create a right of reclamation, it merely provides a means for enforcing such a right in the event it exists under other applicable law. In the event such a right exists, § 546(c) goes on to provide that "the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court (A) grants the ... seller [an administrative claim] or (B) secures such claim by a lien." Under this clause, the seller is given a substitute lien in exchange for allowing the debtor to use the goods to continue its operations,[7] similar to the substitute lien

**6.** It appears to be a well-settled rule of law that the holder of a perfected security interest under an after-acquired property clause will be treated as a good faith purchaser under § 2–403 with rights superior to the seller's right of reclamation under § 2–702 of the UCC. *In re Coast Trading Co.,* 744 F.2d 686 (9th Cir.1984); *Matter of Samuels & Co.,* 526 F.2d 1238 (5th Cir.) (en banc), *cert. den.* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *Matter of Bensar Co., Inc.,* 36 B.R. 699 (Bankr.Ohio 1984); *In re Western Farmers Assoc.,* 6 B.R. 432 (Bankr.Wash.1980); *House of Stainless, Inc. v. Marshall and Ilsley Bank,* 249 N.W.2d 561, 75 Wis.2d 264 (1977). *See also* Roper, *The Reclaiming Seller's Rights to Goods and Proceeds as Against Third Parties,* 26 South Tex.L.J. 547, 552 (1985). Both the Bank-

ruptcy Court and the District Court decisions in *Bosler* rely upon this premise as a settled rule of law, without any discussion of the underlying authority or rationale. 67 B.R. at 73; 74 B.R. at 253 & n. 4. This Court, therefore, accepts the position that the rights of the Bank as a secured lender under an after-acquired property clause are the same as those held by a good faith purchaser under § 2–403 of the UCC and the seller's right of reclamation is therefore subject to such superior rights.

**7.** To demonstrate the operation of these provisions, assume that the Bank were not involved in this matter and the Court were considering only the claims of NAP against the Debtor. In that instance, NAP would hold a valid right of

remedy used in the familiar adequate protection and cash collateral rules of the Code. It is clear, however, that the Court is required to grant a lien or administrative claim in lieu of reclamation only when such a reclamation right exists under statutory or common-law independently of § 546(c). No such independent right is held by NAP in this proceeding due to the intervening rights of the Bank. The Court must therefore deny NAP's motion.

### 3. Video King

The Court in *Video King* reached a similar result by reasoning that, although the seller may have a right of reclamation under the UCC, such a right is essentially valueless when it is subject to the intervening claims of a prior secured claimant and thus the seller would be entitled to no administrative claim or lien under § 546(c) for the denial of the chance to exercise this valueless right. 100 B.R. at 1017. As with *Bosler Supply*, the facts in *Video King* closely parallel the instant case. Although the Court did not phrase its rationale in terms of an extinguishment of the reclamation right, it held that § 546(c) only allows the seller to recover whatever it could have recovered under state law independent of the bankruptcy proceeding. *Id.* It went on to find that the reclamation right was of no value outside of bankruptcy due to the prior rights of a secured party. "Section 546(c) ... seeks to give recognition to non-bankruptcy entitlements.... It is not intended to enhance such nonbankruptcy entitlements or to give value to rights which had no value outside of the bankruptcy context." *Id.* Thus, *Video King* applied a two-step analysis: first, the seller was required to establish that it held a right of reclamation which had been properly asserted under the UCC and § 546 of the Code, and second, the seller had to demonstrate the value of that right in order to establish the amount of the lien or administrative claim it was entitled to under § 546(c) of the Code. *Id.* at 1016.

Although *Video King,* 100 B.R. at 1016, cites the District Court decision in *Bosler Supply* as authority for this "value test," the result reached therein is clearly contrary. *Bosler Supply* granted the seller a remedy under § 546(c) equal to the full value of the goods at issue despite the fact that the seller's reclamation rights were subject to the prior claim of the secured party. Applying the value test used in *Video King,* the reclamation right would be considered worthless and the seller would not have been entitled to a full-value lien or administrative claim. Thus it is clear that *Bosler Supply* does not use this approach. Rather, *Bosler* holds that the seller is entitled to full value in the bankruptcy against the other unsecured creditors without any consideration of or decrease for the competing claims of secured parties.

This Court has applied a slightly different rationale from that used in *Video King,* but it too reaches a conclusion contrary to the holding in *Bosler Supply.* As discussed above, this Court has concluded that even though the seller has made a proper and timely demand for reclamation under § 2–702 of the UCC, this right is subject to and extinguished by the superior rights of a secured lender claiming under a security interest containing an after-acquired property clause. Furthermore, since § 546(c) of the Code does not operate to re-instate or enlarge the seller's statutory reclamation rights, there is no such right which may be asserted in these bankruptcy proceedings. Although the Court has the utmost respect for its colleagues on the District Court, the reasoning expressed above compels it to reach a decision contrary to *Bosler Supply.*

This conclusion raises an important issue of *stare decisis* and precedent regarding the extent to which this Court is bound by the earlier decision of the District Court in *Bosler Supply* when it feels that the result reached therein is contrary to the literal language of § 546(c).

reclamation created under § 2–702 of the UCC which could then be asserted in this proceeding pursuant to § 546(c) of the Code. The Court would be required to give NAP either a lien or an administrative claim in lieu of reclamation under those facts.

## B. Stare Decisis

Under the principle of *stare decisis*, inferior or lower courts are bound to follow the decisions of superior courts. This fundamental premise is the very basis of our judicial system and is inseparably linked to the hierarchial structure of the federal courts. 1b J. Moore, J. Lucas & T. Currier, *Moore Federal Practice* ¶ 0.401 (2d ed. 1990). Under this hierarchy, it is clear that all American courts, state and federal, are bound by the decisions of the Supreme Court of the United States on questions of federal law since the Supreme Court is the highest court. Likewise, the federal district courts and bankruptcy courts in a particular circuit are bound by decisions of the court of appeals in that circuit since the court of appeals is a higher court. As higher courts, the Supreme Court and the courts of appeal exercise appellate jurisdiction over all other courts to develop a uniform body of precedent and law. Because there is only one entity (either the Supreme Court or the court of appeal for that circuit) charged with defining the controlling law, the lower courts can thereafter rely upon the pronouncements of that entity, thus limiting the number of appeals taken. This is the rationale and function of the principle of *stare decisis.*

■ Under this rationale, however, it is not clear whether a bankruptcy court is bound by decisions of the district courts in that district. The district court is not a higher court in the same sense that the courts of appeal and the Supreme Court are higher courts, even though it exercises appellate jurisdiction over the bankruptcy courts. The unique structure of the bankruptcy court system makes it a unit of the district court rather than a lower court. The bankruptcy courts are therefore not bound to follow the decision of a single district court judge in a multi-judge district when they disagree with the reasoning and conclusions expressed therein.

The bankruptcy court system as it exists today was established in 1984 pursuant to title 28 U.S.C. § 151 (1990).[8] The statute expressly provides that the bankruptcy court "shall constitute a unit of the district court to be known as the bankruptcy court for that district." The statute authorizes the bankruptcy judge, "as a judicial officer of the district court," to exercise all the authority conferred upon the bankruptcy courts under title 28. Section 157 effectuates this grant of authority by authorizing the district court to refer "any or all cases under title 11 and any or all proceedings under title 11 or arising or related to a case under title 11" to the bankruptcy judges for that district. Thus, although the district court is vested with original jurisdiction over cases arising under title 11 as set forth in 28 U.S.C. § 1334(b), this jurisdiction is not exclusive and 28 U.S.C. § 157 allows the bankruptcy court to exercise such jurisdiction when the district court has so provided. The District Court for the Northern District of Illinois has so provided in a General Order dated July 7, 1984.

Congress found it necessary to create this bifurcated scheme of jurisdiction to comply with the constitutional requirement that only Article III judges exercise the judicial power of the United States as expressed in the Supreme Court's holding in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 82–86, 102 S.Ct. 2858, 2877–79, 73 L.Ed.2d 598 (1982).[9] As a non–Article III judge, the bankruptcy judge can only exercise such judicial power under the supervision and control of the district court. This control is

**8.** Section 151 states:

In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except where as otherwise provided by law or by rule or order of the district court.
28 U.S.C. § 151 (1990).

**9.** Bankruptcy judges are not Article III judges since they are not appointed for a lifetime tenure, although they are serving as "judicial officers of the district court established under Article III of the Constitution." 28 U.S.C. § 152(a)(1) (1990); U.S. Const. art. III, § 1.

achieved through the distinction of "core" and "non-core" jurisdiction granted in § 157 and through the vesting of appellate jurisdiction in the district court under § 158.

Under § 157(b), bankruptcy judges can hear and enter final orders in "core" proceedings, which are "integral to the core bankruptcy function of restructuring debtor-creditor rights," including "all necessary aspects of the bankruptcy case" such as those listed in subsection (b)(2). 130 Cong. Rec. E1109 (daily ed. March 20, 1980) (statement of Rep. Kastenmeier.) The final order of a bankruptcy judge is a core proceeding which is then subject to appellate review by the district court pursuant to 28 U.S.C. § 158(a). In reviewing such a final order in a core proceeding, the district court applies a clearly erroneous standard of review for findings of fact and a *de novo* standard of review for conclusions of law to ensure the control and supervision required by Article III.

Bankruptcy judges cannot, however, enter final orders in "non-core" proceedings without the consent of parties. Section 157(c) provides that (unless the parties consent otherwise) the bankruptcy judge may hear a non-core proceeding only if it is "otherwise related to a case under title 11." The bankruptcy judge's role in such a proceeding is limited to the submission of proposed findings of fact and conclusions of law to the district court, which then undertakes *de novo* review of such proposals to ensure compliance with Article III. With the consent of the parties, however, the district court may refer such a "related" matter to the bankruptcy court as if it were a core proceeding which is then subject to appellate review by the district court. 28 U.S.C. § 157(c)(2) (1990).

Under this bifurcated jurisdictional structure, the bankruptcy court operates as a unit of the district court which is subject to appellate review in core matters or in non-core related matters heard with the consent of the parties and subject to *de novo* review of the proposed findings and conclusions submitted in non-core related matters where the parties do not consent to bankruptcy court jurisdiction. Although the district court does hold appellate jurisdiction, it is not a "higher court" in the sense that the Supreme Court or the courts of appeal are higher courts. Rather, the bankruptcy court operates as a unit of the district court on an equal level. A review of the rationale underlying *stare decisis* and the hierarchial structure of the federal courts demonstrates that this is the proper and intended function of the bankruptcy courts.

As highlighted in *In re Gaylord*, 123 B.R. 236, 241–42 (Bankr.E.D.Mich.1991) (containing a thorough discussion of this issue), the rationale underlying the rule that lower courts are necessarily bound by the decisions of higher courts focuses on the need to avoid voluminous appeals. This reasoning, however, does not apply in the context of the appellate jurisdiction of a multi-judge district court over the bankruptcy courts of that district. It is a well-accepted rule of law that no judge within a district court is bound by the decision of the other district judges. *Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 & n. 7 (3d Cir.1991) (citing multiple authorities for this premise); *United States v. Articles of Drug Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir.1987); *Mueller v. Allen*, 514 F.Supp. 998, 1001 (D.Minn.1981), *aff'd* 676 F.2d 1195 (8th Cir.1982), *aff'd* 463 U.S. 388, 103 S.Ct. 3062, 77 L.Ed.2d 721 (1983); *Starbuck v. City and County of San Francisco*, 556 F.2d 450, 457 n. 13 (9th Cir.1977). Rather, a district court judge is free to reexamine an issue despite the existence of a prior decision of another judge in the same district.[10] Thus, unless all judges in a single district have ruled consistently upon the same issue, there will be a strong incentive to appeal from the decisions of the bankruptcy court even if it is deemed bound by a prior district court opinion. Furthermore, in the event of conflicting

---

10. A contrary holding would result in allowing the random assignment of cases to a judge to dictate which judge first ruled on any issue and thereby made the binding "law of the district, even if all the other judges in the district strongly disagreed with the holding."

district court opinions, the bankruptcy court is faced with the problem of determining which is binding. *See also Gaylord*, 123 B.R. at 242–43 (discussing the problems raised by the disparate number of district judges compared to bankruptcy judges). Unlike the Supreme Court or the courts of appeal, the district court does not speak with one voice and thus it cannot be treated as a higher court issuing binding precedent for the bankruptcy courts.

Although numerous bankruptcy and district courts have addressed this issue, creating a wonderfully diverse body of (non-binding) caselaw, to the extent that there is a majority or minority position, this Court would describe it as a strong trend in recognition of the non-binding nature of district court decisions. Those in favor of accepting district court decisions as binding generally contain little or no discussion of the underlying rationale, merely stating that *stare decisis* requires such a result. *See, e.g., In re Bill Ridgeway, Inc.*, 4 B.R. 351, 353 (Bankr.D.N.J.1980); *In re V–M Corporation*, 23 B.R. 952, 954–55 (Bankr. W.D.Mich.1982); *Eaton Land & Cattle v. Rocky Mtn. Investments*, 28 B.R. 890, 892 (Bankr.D.Colo.1983); *In re St. Louis Freight Lines*, 45 B.R. 546, 551 (Bankr. E.D.Mich.1984); *In re Investment Sales Diversified, Inc.*, 49 B.R. 837, 846 (Bankr. D.Minn.1985); *In re Moisson*, 51 B.R. 227 (Bankr.E.D.Mich.1985); *In re Johnson–Allen*, 67 B.R. 968 (Bankr.E.D.Pa.1986). In contrast, those cases rejecting the premise that district court decisions are binding upon the bankruptcy courts, as this Court does, are typically recent decisions which discuss the court structure and the function of the principle of *stare decisis* in our judicial system. *See, e.g., In re Windsor Communications Group*, 67 B.R. 692, 698–99 (Bankr.E.D.Pa.1986); *In re Gaylord*, 123 B.R. 236, 241–43 (Bankr. E.D.Mich.1991); *In re Morningstar Enterprises*, 128 B.R. 102, 106 (Bankr.E.D.Pa. 1991); *In re Rheuban*, 128 B.R. 551, 554–55 (Bankr.C.D.Cal.1991); *In re Goode*, 131 B.R. 835, 840 n. 2 (Bankr.N.D.Ill.1991); *In re Rosemary*, 134 B.R. 34, 37 n. 6 (Bankr. W.D.Okla.1991); *In re Argo Communications*, 134 B.R. 776, 786 n. 9 (Bankr.

S.D.N.Y.1991). In addition, a similar issue has arisen with regard to the precedential value and binding nature of decisions issued by the Bankruptcy Appellate Panel sitting in the Ninth Circuit. Several courts have concluded that, although the BAP exercises appellate review over bankruptcy courts in place of the district court, the bankruptcy courts in that circuit (or any other) are not bound by the decisions of the BAP as if it were a higher court. *See* March & Obregon, *Are BAP Decisions Binding On Any Court?*, 18 Cal.Bankr.J. 189 (1990) (containing a thorough discussion and review of the case law and reasoning in support of this position.)

■ This Court therefore concludes that under the principle of *stare decisis* it is not bound to follow the decision of the district court in *Bosler Supply* regarding the exercise of reclamation rights in bankruptcy. In the interests of comity and uniformity, this Court strongly believes that the bankruptcy courts should give deference to and seek to follow the decisions of the district court judges, but it is not absolutely bound to do so when it feels that the result reached therein is contrary to the intended scope of the Bankruptcy Code.

As discussed above, the interpretation given to § 546(c) by the District Court in *Bosler Supply* has the effect of expanding the seller's reclamation rights beyond those given under state law contrary to the literal language and intended function of the Code. Section 546(c) is designed to allow the seller of goods to reclaim such goods pursuant to a timely written request only to the extent that the seller has "any statutory or common law right" of reclamation. In this instance NAP has no such right since it was subject to and extinguished by the prior security interest held by the Bank in the same goods.

It is therefore ordered that the Motion of NAP for a lien or for administrative claim treatment is hereby denied.