**In re Benjamin C. PHIPPS, Molly L. Phipps, Debtors.**

**IRR SUPPLY CENTERS, INC., Individually and on behalf of all the Lienors, Claimants or Creditors for wages or materials in connection with improvement of certain land and premises herein described, Plaintiff,**

v.

**Benjamin C. PHIPPS, Defendant.**

**Bankruptcy No. 97–11868 K.**

**Adversary No. 97–1105 K.**

United States Bankruptcy Court, W.D. New York.

Feb. 17, 1998.

Melissa A. Tocha, Aaron, Dautch, Stern-berg & Lawson, L.L.P., Buffalo, NY, for Plaintiff.

Mark E. Lewis, Williamsville, NY, for Debtors.

### DECISION AND ORDER GRANTING SUMMARY JUDGMENT TO THE PLAINTIFF

MICHAEL J. KAPLAN, Bankruptcy Judge.

There is a vast amount of scholarship to the effect that a bankruptcy judge is not bound in Case B by a decision of just one district judge in Case A, if the district has

more than one district judge.[1] Today, this Court finds that the rule is to the contrary in the Second Circuit, if the decision in Case A was submitted by the district judge for publication.

## BACKGROUND

Plaintiff, Irr Supply Centers, Inc. ("Irr"), filed this adversary proceeding in order to have Benjamin Phipps' ("Debtor") debt to them declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4).[2] Irr asserts that the Debtor's obligation to them resulted from "fraud or defalcation while acting in a fiduciary capacity." The Debtor argues that he owed no fiduciary responsibilities to Irr. This matter has been submitted for decision on cross-motions for summary judgment, and the underlying issue of law is whether, for purposes of § 523(a)(4), a fiduciary relationship is created under the trust fund laws of Article 3A of New York Lien Law.

The facts are as follows: The Debtor was an officer and the owner of a construction company, PSD Mechanical Inc. ("PSD"). Irr supplied PSD with plumbing supplies to be used on several of PSD's construction projects, and the Debtor, individually, guaranteed payment to Irr on its subcontracts for those plumbing supplies. Irr alleges that PSD received payment on its construction contracts, but the Debtor caused those funds to be used for business purposes other than to repay suppliers and materialmen, including Irr.[3]

Irr argues that under Article 3A of the New York Lien Law and the decision of the District Court in *Besroi Construction Corp. v. Kawczynski*, 442 F.Supp. 413 (W.D.N.Y. 1977), the funds that PSD received on its construction contracts (except to the extent that they were profit for PSD) were held in trust for suppliers, materialmen, etc, and that a fiduciary relationship was created. The Debtor does not dispute the fact that funds received on the construction contracts were used for other business purposes, but disputes Irr's assertion that he owed Irr a fiduciary duty for § 523(a)(4) purposes, or that his actions were the result of fraud or defalcation. According to the Debtor, the inability to pay suppliers and his subsequent bankruptcy filing resulted from the "gross miscalculation of a job in Albany in the summer of 1996." *Debtor's Response to Summary Judgment Motion at 4 (December 24, 1997).*

## THE BINDING EFFECTS
## OF *KAWCZYNSKI*

In *Kawczynski*, the District Court of this District, Hon. John T. Curtin, J., under similar facts, found that "once [an] owner makes payment [to the contractor], the contractor takes on new fiduciary obligations in addition to and independent of his contractual duties: he must segregate and keep records of trust funds, and pay them out according to a statutory priority scheme." *Kawczynski*, 442 F.Supp. at 417. The Court

1. See, e.g., *City of Olathe, Kansas v. KAR Dev. Assoc. (In re KAR Dev. Assoc.)*, 180 B.R. 629, 639–40 (D.Kan.1995); *Cumberland Farms, Inc. v. Barnstable (In re Cumberland Farms, Inc.)*, 175 B.R. 138, 140 n. 4 (Bankr.D.Mass.1994); *In re Shattuc Cable Corp.*, 138 B.R. 557, 565–67 (Bankr.N.D.Ill.1992); *Pereira v. Centel Corp. (In re Argo Communications)*, 134 B.R. 776, 786 n. 9 (Bankr.S.D.N.Y.1991); *First of America Bank v. Gaylor (In re Gaylor)*, 123 B.R. 236, 241–43 (Bankr.E.D.Mich.1991); *In re Rheuban*, 128 B.R. 551, 554–55 (Bankr.C.D.Cal.1991); *In re Windsor Communications Group*, 67 B.R. 692, 698–99 (Bankr.E.D.Pa.1986). *But see* citation of cases holding otherwise in *Shattuc Cable*, 138 B.R. at 567; *Bryant v. Smith*, 165 B.R. 176, 180 (W.D.Va.1994).

2. Irr filed its complaint "Individually and on behalf of all the Lienors, Claimants or Creditors for wages or materials in connection with im-

provement of certain land and premises herein described." Because no class action certification was sought and there is no suggestion that Irr is acting as attorney-in-fact for other claimants, the Court presumes that the intention was simply to recognize that if this suit were to turn up trust fund monies, such monies could not go to Irr alone. There does not appear to be any such funds "in hand," though the Debtor claims that he has not received full payment on some jobs. For purposes of a ruling as to dischargeability, however, the complaint must be treated as a complaint by Irr alone and will be so treated in this Decision.

3. In his answer, the Debtor claims that PSD did not receive full payment on those contracts. For reasons set forth later, it does not matter for purposes of this decision whether PSD was paid in full or not.

further found that "[a]lthough the funds were used for legitimate business purposes such as paying various overhead expenses, these payments nevertheless amounted to a diversion of trust funds under [New York law]." Any funds, therefore, which were received by the contractor, but were not used first to pay subcontractors, were found to be nondischargeable debts owed to the subcontractor.

This writer has a deep respect for the scholarship contributed by others to the effect that: (1) bankruptcy judges exercise the jurisdiction of the district court in bankruptcy matters; and (2) the bankruptcy courts, consequently, are not inferior courts for purposes of *stare decisis* analysis; and therefore (3) a bankruptcy judge is as free to differ with an earlier decision of a district court judge as would be a different district judge of that district.[4] Even if I were not *required* to differ with that scholarship, as discussed later, I would differ for reasons that are no less doctrinaire than the underpinnings of that view. My own view (a dogmatic view, perhaps) is that any court whose decisions (even if. unanimous) are subject to reversal by a single judge of another court is "inferior" to the reversing court for *stare decisis* purposes. Furthermore, whatever else the 1984 jurisdictional amendments did or did not do, they did not make this writer a judge of the district court, for purposes of 28 U.S.C. § 132(b) and (c).[5] Therefore, I do not sit in the stead of a district judge even in "core" bankruptcy matters *see* 28 U.S.C. § 157, and, in my view, no reading of the statutory structure establishes otherwise. For this reason as well, I find unpersuasive the argument that a bankruptcy judge is not bound by the decision of one district judge because district judges are not bound by decisions of other district judges.

Furthermore, I believe that the fact that a district judge may at any time, "for cause shown,". *sua sponte* pull from the bankruptcy court any ·matter before it, puts the issue beyond all doubt. *See* 28 U.S.C. § 157(d). (These last two points are often ignored in contrary analyses—thus my assertion that both my point of view and the others are doctrinaire.)

The Second Circuit Court of Appeals has addressed this issue and resolved it in favor of a bankruptcy judge being bound by the earlier decision of a single district judge who sits in a multi-judge district court, even though the earlier decision was in a different case.

One of the most significant cases (for another purpose) in all of bankruptcy law under the 1978 Code arose in 1981 in this very District—the Chapter 11 case of *Whiting Pools*. In *Whiting Pools*, a seminal issue arose at the bankruptcy court level as to the authority of a bankruptcy court to direct the Internal Revenue Service ("IRS") to hand back to the debtor inventory that was seized prepetition, so long as there is "adequate protection" of the IRS's interest. In an earlier case, *In re Avery Health Center, Inc.*, 8 B.R. 1016 (W.D.N.Y.1981), one district judge of this multi-judge District Court had ruled that if such turnover power existed, it did not exist under 11 U.S.C. § 542. When presented with the same issue in *Whiting Pools*, my now-retired and deeply respected colleague, Edward D. Hayes, U.S.B.J., recognizing the binding effect of *Avery*, stated that "[s]ections 542 and 543 are the only express turnover provisions in the new Code. *Since the Avery case has rendered the former inapplicable*, the applicability of the latter must now be determined." *United States v. Whiting Pools (In re Whiting Pools)*, 10 B.R. 755, 759 (Bankr.W.D.N.Y.1981) (emphasis added). In that decision, Judge. Hayes found the turn-

4. *See, e.g., Shattuc,* 138 B.R. at 565; *Gaylor,* 123 B.R. at 241.

5. 28 U.S.C. § 132(b) and (c) provide:
 (b) Each district court shall consist of the district judge or judges for the district in regular active service justices or judges designated or assigned shall be competent to sit as judges of the court.

(c) Except as otherwise provided by law, or rule or order of court, the judicial power of a district court with respect to any action suit or proceeding may be exercised by a single judge, who may preside alone and hold a regular or special session of court at the same time other sessions are held by other judges.

over power instead to lie in § 543 as to the IRS.

On appeal, the matter in *Whiting Pools* was assigned to the same District Judge who had decided *Avery*. In reversing Judge Hayes, the District Court stated, "The Bankruptcy Judge *recognized* that *Avery Health Center forecloses* application of section 542 to require the IRS to turn over the levied property in the *present* [the *Whiting Pools* ] case" *In re Whiting Pools*, 15 B.R. 270, 272 (W.D.N.Y.1981) (emphasis added).

When the matter reached the Second Circuit, that court said this:

> Although Whiting had sought a turnover under § 542, the bankruptcy judge *was precluded* from granting relief under that section by the decision [of the District Judge] in ... *In re Avery Health Center...* with which he [the bankruptcy judge] seemingly disagreed. Believing that the turnover powers formerly provided in proceeding under Chapter X of the Bankruptcy Act ... must have gone somewhere, he found them in § 543(b)....

*United States v. Whiting Pools*, 674 F.2d 144, 146–47 (2d Cir.1982).[6]

On further appeal, the U.S. Supreme Court affirmed, saying nothing informative about the present point. It merely footnoted the fact that Judge Hayes "felt himself bound" by *Avery*. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 201 n. 6, 103 S.Ct. 2309, 2312 n. 6, 76 L.Ed.2d 515 (1983).

To be sure, it is possible that each of these four courts (bankruptcy, district, circuit and Supreme) at every level simply "presumed" that the District Court decision in *Avery* bound the bankruptcy judge in *Whiting Pools,* and that none of the four courts (bankruptcy, district, circuit and Supreme) actually decided the issue. However, this writer knows for a fact that the various bankruptcy judges of this District believed that the binding effect of a district judge's decision was something more than a matter of a presumption, though perhaps something less than a certainty. Moreover, the Second Circuit's language is telling; the court said that Judge

Hayes "seemingly disagreed" with *Avery*. Yet it did not simply rule that he was not constrained, and remand for consideration free from *Avery*. Rather, the Circuit accepted the premise and extensively analyzed the merits of the District Court's ruling by which Judge Hayes felt bound.

However else any other judge of any other superior or inferior court of the Second Circuit may interpret these rulings, this writer will not split hairs over the language of the Circuit Court's decision. The premise upon which the *Whiting Pools* matter proceeded at the bankruptcy and district court levels here was not aberrant. That a district court decision is more than merely persuasive authority is "meat and potatoes" here in daily practice among the bankruptcy judges of the Western District (though practicing attorneys might not be aware of that). That view differs, however, from that of many other districts.

Some might argue that this interpretation of the *Whiting Pools* rulings is no longer valid since the bankruptcy courts became (in 1984) a "unit" of the district courts as opposed to the "independent" courts that the *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), decision ruled unconstitutional in 1982. I do not agree.

Some believe that the 1984 amendments made the bankruptcy courts more constitutional by making them more subordinate to the district court. I agree. Consequently, I find that efforts to read the bizarre, but functional, 1984 amendments in such a way as to render the bankruptcy courts less inferior for *stare decisis* purposes than they were in 1981, rest on too slender a reed to stand. I find that I am bound by *Kawczynski.*

 I hasten to add that neither bankruptcy judges nor lawyers who practice in bankruptcy courts cam be expected to know about district court decisions that have not been published. Even if this were not acknowledged in some form in the local rules of virtually every appellate court, state and fed-

---

**6.** The Circuit not only reversed the District Court in *Whiting Pools* on this point, but also overruled *Avery* and found the pertinent turnover power in § 542.

eral,[7] it is a self-evident proposition. Consequently, this decision is limited to rulings of the District Court of this District that have been submitted for publication, unless and until the District Court directs otherwise.

### APPLICATION OF THE RULE TO THIS CASE.

■ In accordance with *Kawczynski*, I find that the statutory trust created by Article 3A of the Lien Law does create the type of fiduciary duty that is within the contemplation of 11 U.S.C. § 523(a)(4). I am further bound by *Kawczynski* to deny discharge of the debt owed to Irr if the Debtor here caused PSD to expend trust funds other than to Lien Law beneficiaries.[8] In accordance with the above *stare decisis* discussion, the cases to the contrary cited by the Debtor that were decided elsewhere are of no force or effect in this District. The only remaining question, then, is whether the present case is factually distinct from *Kawczynski*.

By the Debtor's own affidavit, he applied trust funds to the payment of some business debts other than to trust fund beneficiaries; the April 28, 1997 Affidavit of Benjamin Phipps admits that tens of thousands of trust fund dollars were paid to non-beneficiaries such as taxes and office expenses. (His counsel's supplemental letter brief of January 29, 1998, is without foundation to the extent that it claims that Irr has not properly supported its motion with evidence. As noted below, trust fund records were the Debtor's responsibility. Not only has the Debtor not produced such records, but he admits the diversion.)

While it is perhaps true that PSD underbid one or more of these projects with the result, as Phipps argues, that he "simply ran out of funds and could not continue to operate his business," *Debtor's Memo. of Law (Dec. 24, 1997)*, it seems clear that PSD would have paid more to Irr had Phipps applied the trust funds entirely to trust fund beneficiaries before using them to pay other expenses. If the consequence of honoring the duty of trust would have resulted in having to cease business operations sooner, then Phipps acted at his personal peril in failing to do so. As it is, he kept PSD alive a bit longer with money that belonged to Irr and other trust fund beneficiaries. (He is fortunate that only Irr filed a timely complaint. *See supra note* 1.)

Under *Kawczynski*, the only time that simply running out of money would constitute a defense would be if all trust funds were paid only to trust fund beneficiaries, but the job was so underbid that there could never be enough proceeds to pay all the laborers, materialmen and suppliers. One cannot misapply proceeds that never existed. But the Debtor's own proof here demonstrates that some trust funds did exist that were misapplied.

■ One final note. Had the Debtor maintained suitable trust fund records, he might have been able to prove (if such was the case) that none of the money paid to non-trust-fund beneficiaries were trust funds. For example, if a substantial portion of the $602,194 in construction revenue paid out to non-beneficiaries could be proven to have been profit on one or more particular jobs (*i.e.*, after full payment of all Lien Law claims on that job or jobs), then that profit could rightly have been used to pay other expenses. There is no duty of trust to use profit from one job to pay Lien Law claims on another job that was underbid and consequently will not generate enough proceeds to satisfy Lien Law claims on that job. Furthermore, it is possible that some portion of the total dollar amount owed to Irr relates to a particular project as to which no trust funds were diverted, in which event that portion would be dischargeable in bankrupt-

---

7. For example, the Second Circuit's Rule regarding statements that are appended to summary orders notes that "they shall not be cited or otherwise used in unrelated cases before this or any other court," because, *inter alia*, they "are unreported or not uniformly available to all parties." *Rules Relating to the Organization of the Court* § 0.23, *reprinted in* Second Circuit Redbook 1997–1998 (Federal Bar Council).

8. Although *Kawczynski* was decided under the Bankruptcy Act of 1898 ("1898 Act") rather than the 1978 Code, there is no difference in the pertinent provisions. *Kawczynski* interpreted the "defalcation" provision of the 1898 Act, not the "misappropriation" provision, which was deleted in the Code.

cy. But contrary to the Debtor's counsel's letter of January 29, 1998, the burden of such proof is on the Debtor, as the Lien Law trustee; it is not for the beneficiary to prove a contrary set of facts. The Debtor has offered no such proof in response to Irr's Motion for Summary Judgment.

The Debtor's cross-motion and request for attorney's fees is denied. Judgment will be entered for Irr in the amount of $22,495.32, plus interest and costs.[9]

Nothing in this Decision addresses how this Court would rule if *Kawczynski* were not binding. If the Debtor appeals, it shall be for the higher courts to determine the effect, if any, to be given *Kawczynski* here or there.

SO ORDERED.

---

9. The remainder of the letters of January 29, 1998 and February 2, 1998, of respective counsel will be addressed in a separate order.